SWISSAIR, Swiss Air Transport Co., Ltd.,
Appellant,

v.

Robert F. KENNEDY, Attorney General
of the United States, et al., Appellees.

No. 17823.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 15, 1963.

Decided Dec. 12, 1963.

4

Mr. George F. Galland, Washington, D. C., with whom Mrs. Amy Scupi, Washington, D. C., was on the brief, for appellant.

Mr. William H. Willcox, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Gil Zimmerman, Asst. U. S. Attys., were on the brief, for appellees.

Before EDGERTON, Senior Circuit Judge, and FAHY and DANAHER, Circuit Judges.

FAHY, Circuit Judge.

The appeal questions the validity of a fine of $1,000 imposed upon appellant, an airline company, by the Board of Immigration Appeals under Section 273 of the Immigration and Nationality Act, 66 Stat. 227 (1952), 8 U.S.C. § 1323 (1958). The fine was challenged in the District Court by an action brought under the provisions of the Immigration and Nationality Act, 66 Stat. 230 (1952), 8 U.S. C. § 1329 (1958), and the Administrative Procedure Act, 60 Stat. 243 (1946), 5 U.S.C. § 1009 (1958). On cross-motions for summary judgment the court granted the motion of defendants,[1] the appellees, and dismissed the complaint. We affirm.

Under said Section 273 it is unlawful for a transportation company, such as appellant Swissair, to bring to the United States from outside its boundaries an alien "who does not have an unexpired visa, if a visa was required under this Act or regulations issued thereunder." If it appears to the satisfaction of the Attorney General that this provision has been violated the transportation company shall pay $1,000 for each alien so brought. It is further provided that this sum shall not be remitted or refunded unless it appears to the satisfaction of the Attorney General that the transportation company, prior to the departure of the aircraft from the last "port" outside the United States, "did not know, and could not have ascertained by the exercise of reasonable diligence, that the individual transported was an alien and that a visa was required."

A regulation issued by the Attorney General under the authority conferred upon him by the Act and designated as § 211.1 of 8 Code of Federal Regulations, provides that a valid unexpired immigrant visa shall be presented by each arriving immigrant alien, with certain exceptions.[2] One of the exceptions applies to an immigrant who is returning

1. The suit was brought against Robert F. Kennedy in his capacity as Attorney General of the United States and against Raymond F. Farrell in his capacity as Commissioner of Immigration.

2. Changes in this Regulation since September 30, 1961, the date the violation here in question occurred, are not material insofar as the present case is concerned. 8 C.F.R. § 211.1 (1963 Supp.).

to an unrelinquished permanent lawful residence after a temporary absence abroad not exceeding one year and who presents a "Form I–151 alien registration receipt card duly issued to him." The regulation further provides, however, that such a Form I–151 card "shall be invalid under this section when presented by an alien who during his temporary absence abroad traveled to, in, or through * * * Rumania * * *," if the card is not endorsed to show that this restriction has been waived.

William J. Arkins was an immigrant returning to an unrelinquished permanent residence in the United States. He was an employee of Swissair and, though a native and citizen of Ireland, had become a legal resident of the United States by entering originally in 1955 under a valid immigrant visa. In 1961 he traveled by Swissair from New York to Zurich on a ticket supplied by Swissair to Zurich and return. From Zurich he visited Rumania on business for Swissair, returned to Zurich, and then was transported by Swissair to the United States via Ireland, where he stopped for a week. When he reached Idlewild Airport it was learned that during this temporary absence from the United States he had made the trip to Rumania. The immigration authorities held that this invalidated his Form I–151 re-entry permit and subjected Swissair to the fine, since a visa became required by the absence of a valid re-entry permit.

Swissair makes no contention that it is excused from the fine under the provisions applicable to one who "did not know, and could not have ascertained by the exercise of reasonable diligence, that the individual transported was an alien and that a visa was required," 8 U.S.C. § 1323(c), that is, Swissair makes no contention of a factual character that it was unaware of all that had occurred with respect to the trip to Rumania. It contends as a legal proposition that the penalty provisions of Section 273 do not apply since a visa was not required. The theory advanced is that since Arkins could have entered on a valid re-entry permit he was not required to have a visa within the meaning of the statutory provisions to which we have referred.

■ We think Swissair's contention cannot be sustained. Regulation § 211.1 was authorized by the statute. Under this regulation the re-entry permit had become invalid because of the trip to Rumania. In this situation the regulation required a valid unexpired immigrant visa. With full knowledge of the facts Swissair brought Arkins to the United States without such a visa. To repeat, Arkins was "returning to an unrelinquished lawful permanent residence after a temporary absence abroad" and did not have a valid "Form I–151 alien registration receipt card duly issued to him," and, therefore, was required to present "a valid unexpired immigrant visa." § 211.1, cited supra.

■ In Hamburg-American Line v. United States, 291 U.S. 420, 423–425 (1934), 54 S.Ct. 491, 78 L.Ed. 887, decided under Section 16 of the Immigration Act of 1924, ch. 190, § 16, 43 Stat. 163, the predecessor of the present Section 273, the alien could have entered without a visa by means of a valid re-entry permit. However, since he did not possess a permit the Court held that a visa was required and sustained the imposition of a fine upon the carrier for transporting him to this country without a valid visa. Appellant concedes that the above decision would require affirmance in this case except for a change Congress made in the statute in 1952 by limiting a carrier's liability to cases where "a visa was required under this Act or regulations issued thereunder"—a limitation not expressly stated in the 1924 Act. However, as we have set forth above, under the terms of the statute and regulations issued thereunder Arkins, not having a valid re-entry permit, was required to have a visa. Accordingly, we do not view the 1952 amendment as substantially changing the law as set forth in Hamburg-American Line. Cf. Peninsular & Occidental S. S. Co. v. United States, 242 F.2d 639 (5th Cir.1957).

Appellant makes a further contention. It points to the language of Section 221 (i) of the Act, 66 Stat. 192 (1952), 8 U.S.C. § 1201(i) (1958), that when a re-entry document has been revoked by the Secretary of State or other consular officer a carrier shall not be penalized under Section 273 for action taken in reliance upon such documentation unless the carrier receives notice of the revocation prior to the alien's embarkation. But this section operates independently of the provisions of Section 273 and Regulation § 211.1. The invalidation of the Form I-151 re-entry permit under the latter provisions was not a revocation under Section 221(i).

Affirmed.