**Jose de BILBAO–BASTIDA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 23154.**

United States Court of Appeals
Ninth Circuit.

April 15, 1969.

Philip Barnett (argued), Los Angeles, Cal., for petitioner.

Carolyn M. Reynods (argued), Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Frederick M. Brosio, Asst. U. S. Atty., Los Angeles, Cal., Joseph Sureck, Regional Counsel, San Pedro, Cal., Stephen Suffin, INS, San Francisco, Cal., John N. Mitchell, Atty. Gen., Washington, D. C., for respondent.

Before BARNES and CARTER, Circuit Judges, and BYRNE,[*] District Judge.

BARNES, Circuit Judge:

This is an appeal from a final order of deportation issued by the Board of Immigration Appeals. Our jurisdiction arises under 8 U.S.C. § 1105a.

Petitioner is an alien, a native and citizen of Spain. He was admitted to the United States as an immigrant and permanent resident on June 23, 1959 at Blaine, Washington. He registered as an alien and was issued an alien registration, or "green" card. (8 U.S.C. § 1103 and 8 C.F.R. § 299.1) Printed on the back of this card was the following statement:

> "This card will be honored in lieu of a visa and passport on condition that the rightful holder is returning to the United States after a temporary absence of not more than one year and is not subject to exclusion under any provision of the immigration laws."

In each of the years 1959, 1960, 1961 and 1963 petitioner left the United States on vacations. On each occasion, he was admitted back into the United States upon showing his alien registration card. In each instance, petitioner's visit was to Mexico, with the exception of his trip in 1961. That year, petitioner went first to Mexico, but also visited Cuba and Guatemala. He stayed about two weeks in Cuba, and testified that he had planned on spending only one week there, but that his departure was delayed by transportation difficulties in Cuba. Petitioner also testified that the purposes of his trip were to visit the sister of a friend and to see Cuba.

Petitioner gave the above testimony with regard to his visit to Cuba in 1963 in the course of proceedings relating to his application for naturalization. Thereafter, on March 22, 1965, an Order to Show Cause was issued by the Immigration and Naturalization Service, charging that petitioner was subject to deportation pursuant to 8 U.S.C. § 1251 (a) (1), as an alien who, at the time of entry, was within the class of aliens excludable by the law existing at the time of such entry, i. e., that petitioner was excludable under 8 U.S.C. § 1182(a) (20), as an immigrant who at the time of application for admission was not in possession of a valid entry document. This was because his alien registration card was not valid for re-entry after travel in Cuba, according to 8 C.F.R. § 211.1, as amended in January 1961.

Pursuant to the above Order to Show Cause, a deportation hearing was held in Los Angeles, California. Petitioner was represented by counsel, and, unlike at his naturalization hearing, chose not to testify. To support its charges, the Immigration Service presented petitioner's sworn application to file a petition for naturalization, two sworn statements of the petitioner to the naturalization examiner before whom the application to file a naturalization petition was sworn, and the two stenographers who recorded the statements testified.

On October 5, 1965, the special inquiry officer rendered a written decision denying petitioner's application for termination of proceedings, ordering that in lieu of deportation petitioner be granted voluntary departure, and further ordering that if petitioner failed to depart as re-

* Hon. William M. Byrne, Senior United States District Judge, Los Angeles, California, sitting by designation.

quired, he be deported to Spain on the charge stated in the Order to Show Cause. Petitioner thereafter filed a notice of appeal to the Board of Immigration Appeals. The Board dismissed the appeal. Petitioner filed a Motion to Reopen and Remand, along with an affidavit, contending that he relied upon his registration card and did not know that a trip to Cuba was improper. The Board denied his motion on the ground that it raised no new issue.

Petitioner next filed a petition for review in this court, and we remanded the case to the Board of Immigration Appeals by order filed February 16, 1967, for reconsideration in light of Woodby v. Immigration & Nat. Serv., 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966). *Woodby* held that the Government in deportation proceedings must establish the facts supporting deportability by "clear, unequivocal, and convincing evidence." The deportation proceeding was then reopened, but no further evidence was submitted by petitioner or the Service. On February 29, 1968 the special inquiry officer found that petitioner's deportability had been established by clear, unequivocal and convincing evidence, which evidence was admittedly true and uncontroverted.

On March 12, 1968, petitioner filed a notice of appeal to the Board of Immigration Appeals, and on July 16, 1968, the Board issued its decision dismissing the appeal. The petition for this court to review that decision was then filed.

This would appear to be the first time a court of appeals has reviewed the validity of a deportation order issued as a result of an alien's re-entering the United States with an alien registration card, following a trip to a prohibited area.

In support of the decision below, the Immigration Service has made the following contentions. First, in response to petitioner's argument that he did not know at the time of his trip to Cuba that he could not re-enter the United States with his alien registration card, the Service takes the position that petitioner had

legal notice of the restriction because the January 1961 amendment to 8 C.F.R. § 211.1 was published in the Federal Register, citing Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 385, 68 S.Ct. 1, 92 L.Ed. 10 (1947) and Wei v. Robinson, 246 F.2d 739, 743 (7th Cir. 1957). 44 U.S.C. § 307 established that proper publication in the Federal Register gives "notice of the contents * * * to any person subject thereto or affected thereby."

The Immigration Service next points out that 8 U.S.C. § 1103 gives the Attorney General broad authority to establish regulations to carry out his authority under the Immigration and Nationality Act, and that regulations issued pursuant to such statutory authority are presumptively valid. Edwards v. Madigan, 281 F.2d 73, 77 (9th Cir. 1960); Cuesta v. United States, 230 F.2d 704, 707 (5th Cir. 1956). Further, the Service maintains that the particular regulation here in question is valid, for it is established that "[t]he alien's right to travel temporarily outside the United States is subject to restrictions not applicable to citizens." Harisiades v. Shaughnessy, 342 U.S. 580, 586–587, 72 S.Ct. 512, 517, 96 L.Ed. 586 n. 10 (1952).

In another context, the court in Swissair v. Kennedy, 117 U.S.App.D.C. 162, 327 F.2d 860 (D.C.Cir.1963), dealt with 8 C.F.R. § 211.1. In affirming the liability of the airline company that brought an alien into the United States who did not have a valid re-entry document, the court assumed the validity of the regulation here in question.

Also in other circumstances, this court, in Holz v. Del Guercio, 259 F.2d 84 (9th Cir. 1958), affirmed an order of deportation based on the charge that the alien had entered the United States without a valid re-entry document, where the alien had presented an alien registration card after having been out of the United States 18 months, longer than permitted for re-entry with this document.

The above authorities would tend to support the position that petitioner in

the present case is subject to deportation on the ground that he entered the United States without a valid re-entry document, in violation of the Immigration and Nationality Act.

However, petitioner has cited certain cases which, he contends, should lead this court to a contrary result. Petitioner makes two contentions: (1) that he did not "enter" the United States in 1961 within the meaning of 8 U.S.C. § 1251(a) (1) so as to be subject to deportation, and (2) that he did not knowingly waive his right to live in the United States as a permanent resident.

8 U.S.C. § 1101(a) (13) provides that "an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary." Petitioner here does not contend that his trip to Cuba was involuntary. Rather, he asserts that he did not make an "entry" into the United States according to the principles enunciated in Rosenberg v. Fleuti, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963). That case construed the intent exception in § 1101(a) (13), quoted above, "as meaning an intent to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence." Id. at 462, 83 S. Ct. at 1812. The Court there stated that factors to consider in determining the alien's intent are the length of the absence, the purpose of the visit, and the necessity of travel documents. No one factor is conclusive.

Petitioner in this case was out of the United States about two months—considerably longer than the "couple of hours" (Id. at 450, 83 S.Ct. 1804) that Fleuti was absent. Petitioner stated that one purpose of his trip was to visit the sister of a casual "friend." He could not remember the first name of his friend at the time of his naturalization hearing. Thus stated, the purpose of the visit might have been compatible with our immigration laws. However, when we focus on petitioner's second purpose—his curiosity to see Cuba—that purpose in July 1961 was contrary to the policy reflected in our immigration laws. When questioned about the political situation in Cuba, he first denied any knowledge that Cuba was a Communist state, or that Castro was a Communist. When questioned more closely about such lack of knowledge, he stated: "I prefer not to answer that question, or any others along this line. * * *" With regard to the necessity of travel documents, petitioner obtained a Spanish passport in Mexico and a visa from the Cuban consulate in Mexico. According to the Court in *Fleuti, supra,* at 462, 83 S.Ct. at 1812, the necessity of procuring these documents should have caused petitioner "to consider more fully the implications involved in his leaving the country."

Finally, petitioner relies upon Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951). The alien in that case, relying upon a treaty between his country, Switzerland, and the United States, declined service in the armed forces of the United States and was thereafter told that as a result of his earlier choice not to serve, he was not qualified to become a United States citizen. At the time he obtained exemption from military service, Moser was not told he would lose his rights to citizenship; in fact, he was advised by the Swiss Legation that he would retain these rights. The Court concluded that petitioner Moser had not "knowingly and intelligently" waived his rights to citizenship. Petitioner in the present case, however, did not seek or rely upon advice from an official source.

Thus, we conclude that petitioner's reliance upon the cases discussed above is misplaced.

Finding no error, the decision of the Board of Immigration Appeals is affirmed.