Carlton L. OWENS, Plaintiff–Appellant,

v.

William BROCK, Secretary of Labor, Defendant–Appellee.

No. 87–5524.

United States Court of Appeals, Sixth Circuit.

Argued May 18, 1988.

Decided Nov. 10, 1988.

Eugene C. Gaerig (argued), Memphis, Tenn., for plaintiff-appellant.

W. Hickman Ewing, U.S. Atty., Joe A. Dycus, Memphis, Tenn., William Kanter, Atty., Appellate Staff Dept. of Justice, Wendy M. Keats (argued), Washington, D.C., for defendant-appellee.

Before ENGEL, Chief Judge, and NELSON and RYAN, Circuit Judges.

ENGEL, Chief Judge.

Appellant Carlton L. Owens appeals the dismissal of his action for attorney fees under EAJA brought in the United States District Court for the Western District of Tennessee Western Division.

Owens's appeal requires us to consider whether benefit determinations under the Federal Employees Compensation Act (FECA), 5 U.S.C. § 8101 *et seq.* constitute "adversary adjudications" for the purpose of qualifying as appropriate proceedings for the application of the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504. We are also presented with the novel question of whether a federal district court has jurisdiction of an appeal from an order of the Employment Compensation Appeals Board (ECAB) denying a petition for attorney fees under the EAJA arising out of a claim for FECA benefits. We conclude that the district court was correct in holding that FECA proceedings are not adversary adjudications. More important, we hold that the district court was without jurisdiction to consider the action in the first place.

Owens, a former federal employee at the Defense Logistics Agency in Memphis, Tennessee sustained back injuries at work during 1977 and 1978. Since he was no longer capable of continuing in his job, he was terminated and given temporary total disability benefits which were thereafter terminated on June 24, 1978 by the Department of Labor's Office of Worker's Compensation Programs (OWCP). Owens challenged the termination, then requested and received a hearing. The OWCP upheld the denial of benefits. However, on appeal to the ECAB, that agency remanded the case to the OWCP for further factual findings. After the OWCP reaffirmed the denial of benefits, the ECAB reversed the OWCP and ordered the benefits restored. After the ECAB's decision in his favor, Owens sought an order determining the appropriate attorney fee and further requested that the fee should be paid by the government under the EAJA. The ECAB approved a fee of $11,300 but stated that the EAJA did not apply to benefit proceedings under the FECA. Presumably the attorney fee was left to be recovered from the employee, through deduction from the benefits or otherwise, but not from funds allocable under the EAJA.

The district court affirmed. The court noted that under 5 U.S.C. § 504(a)(1) the government will pay a party's attorney fees only if the fees result from an "adver-

sary adjudication." This term is defined by 5 U.S.C. § 504(b)(1)(C), which provides that:

> "adversary adjudication" means an adjudication under section 554 of this title in which the position of the United States is represented by counsel or otherwise, but excludes an adjudication for the purpose of establishing or fixing a rate or for the purpose of granting or renewing a license....

The court then stated that a provision of the FECA, 5 U.S.C. § 8124(b)(2), specifically excludes workers' compensation proceedings from coverage under section 554.[1] Thus, the court dismissed Owens's action for fees. Owens now contends that the ECAB proceedings were, in fact, adversary proceedings. He argues that the court below adopted a narrow reading of the statute that is contrary to the statutory purpose of the EAJA.

### I. Adversary Adjudication

■ Owens can muster little support for his claim that FECA determinations are, in fact, adversary adjudications. He relies almost exclusively upon *Escobar Ruiz v. INS*, 838 F.2d 1020 (9th Cir.1988) (en banc). In *Escobar Ruiz*, the Ninth Circuit held that INS deportation proceedings were adversary adjudications, even though Congress did not require that they be directly governed by section 554. The court stated that:

> The dispute centers around the meaning of the phrase "an adjudication under section 554." The government asserts that "under" is the same thing as "conducted under" or "governed by." The petitioner contends that "under" means "as defined by" or "under the meaning of." Both interpretations are plausible;

because the statutory language is unclear, we are justified in looking to the legislative history and purpose of the EAJA in order to ascertain the correct reading.

*Id.* at 1023.

The *Escobar Ruiz* court concluded that the legislative history favored the "defined by" or "under the meaning of" standard. The court cited to language in the House Conference report stating that "[t]he conference substitute defines adversary adjudication as an agency adjudication defined under the Administrative Procedures Act where the agency takes a position through representation by counsel or otherwise." H.R.Conf.Rep. No. 1434, 96th Cong., 2d Sess. 23 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 5003, 5012. The court interpreted this language to mean that it should determine whether the hearing in question was an adversary adjudication by "look[ing] at the procedures by which deportation hearings are actually conducted, rather than determining whether such hearings are technically governed by the APA." *Escobar Ruiz*, 838 F.2d at 1023.

Turning to the actual procedures employed by the INS, the *Escobar Ruiz* court found that "[t]he hearing provisions of the INA and the APA are now fundamentally identical. There is therefore no question that the deportation process conforms to the APA's requirements and constitutes an adversary adjudication as defined under the APA." *Id.* at 1025. The court found that this holding was in accord with the underlying purpose of the EAJA, to permit litigants who prevail after expensive and time-consuming proceedings to be compen-

---

**1.** 5 U.S.C. § 8124(b)(2) provides:

In conducting the hearing, the representative of the Secretary is not bound by common law or statutory rules of evidence, by technical or formal rules of procedure, or by section 554 of this title except as provided by this subchapter, but may conduct the hearing in such manner as to best ascertain the rights of the claimant. For this purpose, he shall receive such relevant evidence as the claimant adduces and such other evidence as he determines necessary or useful in evaluating the claim.

5 U.S.C. § 554 provides for the type of notice that persons entitled to an agency hearing should receive; the type of evidence that should be considered in an agency proceeding; and the behavior of the government employee who hears the evidence presented. Section 554 is a part of the Administrative Procedures Act (APA 5 U.S.C. § 501 *et seq.*) and references in the text to agency hearings conducted under the APA should be interpreted as synonymous with references to proceedings under section 554.

sated for their efforts. *Id.* at 1026. Thus, the court held that INS deportation proceedings were covered by the EAJA. *Id.* at 1030.

We believe that the *Escobar Ruiz* decision ignored an important rule of statutory construction and further misinterpreted the legislative history of the EAJA. The EAJA, by permitting a plaintiff to recover attorney fees from the United States, constitutes a waiver of the government's sovereign immunity. The Supreme Court has recently stated that "[i]n analyzing whether Congress has waived the immunity of the United States, we must construe waivers strictly in favor of the sovereign." *Library of Congress v. Shaw*, 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986). This represents the Court's traditional view of the waiver of sovereign immunity. *See e.g. Ruckelhaus v. Sierra Club*, 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983); *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951). The *Escobar Ruiz* court ignores this rule.

The Ninth Circuit's abandonment of the principle that waiver of immunity is to be construed narrowly is particularly troubling in this case, where the legislative support for that court's position is so ephemeral. The use of the words "defined under" by the House Conference report is not particularly instructive. There is no evidence in the legislative history to indicate that the conference committee understood the term "defined under" to include within EAJA coverage those proceedings that are not governed by section 554 but instead are merely conducted in a similar manner. In fact, the use of a concrete term such as "defined" leads us to believe it probable that Congress intended precisely the opposite interpretation of section 504(b)(1)(C) from the one taken by the Ninth Circuit.

The *Escobar Ruiz* court's reliance on the model rules for the implementation of the EAJA issued by the Administrative Conference of the United States (ACUS), 46 Fed. Reg. 32,900 (1981), is also misplaced. The court stated that the ACUS rules proposed a broad interpretation of adjudications under section 554. *Escobar Ruiz*, 838 F.2d at 1024. However, the ACUS also stated that "[w]e are concerned, however, that the liberal interpretation of the draft model rules may provide for broader applicability than Congress intended." 46 Fed.Reg. at 32,-901. The result of this concern was the elimination of EAJA coverage for agency proceedings that voluntarily use section 554 procedures. However, in discussing the standard to be used for determining EAJA coverage of other cases, the ACUS stated that "[t]here remains, however, the difficult question of what proceedings are 'under section 554.' Where it is clear that certain categories are governed by this section, agencies should list the types of proceedings in their rules." *Id.* Thus, the ACUS rules both eschew a broad interpretation of 504(b)(1)(C) and embrace the "governed under" standard rejected in *Escobar Ruiz*. Given the principle that waiver of immunity is to be narrowly construed, the Ninth Circuit's decision, in light of this contrary legislative history, cannot withstand scrutiny.[2]

*Escobar Ruiz* is also factually distinguishable from this appeal. That case occurred in the deportation context. It is evident that the Ninth Circuit's decision was influenced in some degree by the fact that potential deportees lacking language skills have a particular need for legal assistance in complicated INS proceedings. *Escobar Ruiz*, 838 F.2d at 1026 ("deportation proceedings are difficult for aliens to fully comprehend, let alone conduct, and individuals subject to such proceedings frequently require the assistance of counsel"). Also, the INS does not operate under a provision similar to 5 U.S.C. § 8124(b)(2) and its procedures are not specifically ex-

---

**2.** We also observe that the dissent in *Escobar Ruiz* may be correct in pointing out that the majority has authored an advisory opinion. As the dissent pointed out, the sole question raised *en banc* would not in any event affect the case at hand, as the original panel's determination that plaintiff Ruiz was *not* a prevailing party, 838 F.2d at 1029, was unaffected by a decision either way on the *en banc* question.

cepted from section 554. Thus, both the factual and statutory context of *Escobar Ruiz* separate it from the facts of the instant case.

We therefore conclude that *Escobar Ruiz* is not an adequate precedent to support Owens's claim that the denial of his EAJA petition should be subject to judicial review. As we have previously stated, Owens cannot cite to any other precedent for this proposition. Further, uncontradicted authority supports the proposition that FECA benefit determinations are not adversary adjudications, *Allen v. Faragasso*, 585 F.Supp. 1114, 1118 (N.D.Cal.1984). *See also, Fidelity Construction Co. v. United States*, 700 F.2d 1379 (Fed.Cir.1983) (holding that a type of proceeding specifically exempted from section 554 (board of contract appeals proceedings) does not constitute an adversary adjudication). We therefore would have no qualms about affirming the decision of the district court on the merits if it were not for our jurisdictional concerns, discussed below.

## II. Jurisdiction

Subject matter jurisdiction in this case has been mentioned only parenthetically in appellee's brief and not discussed at all in appellant's brief. However, defects in subject matter jurisdiction cannot be waived by the parties and may be addressed by a court on its own motion at any stage of the proceedings. Fed.R.Civ.P. 12(h)(3). Because a substantial jurisdictional question exists here we are obliged to address it.

■ Review of agency determinations of EAJA awards is provided for at 5 U.S.C. § 504(c)(2): "[a] party dissatisfied with the fee determination made under subsection (a) may petition for leave to appeal to the court of the United States having jurisdiction to review the merits of the underlying decision of the agency adversary adjudication." The specific problem confronting us here is that FECA determinations by the OWCP and the ECAB are simply not subject to judicial review.

The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—(1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128(b). Except for cases alleging that the Secretary violated a claimant's constitutional rights or exceeded the scope of his congressional mandate, courts have unanimously held that section 8128(b) prohibits judicial review of FECA benefit determinations. *See, e.g. Schmid v. United States*, 826 F.2d 227 (3d Cir.1987); *Paluca v. Secretary of Labor*, 813 F.2d 524 (1st Cir.1987); *Stephens v. Office of Worker's Compensation Program*, 721 F.2d 642 (8th Cir.1983).

■ While a reading of section 504 in conjunction with the non-reviewability provisions of section 8128(b) seems to indicate that federal courts have no jurisdiction to review EAJA petitions arising from FECA claims, we have found no reported case in which 5 U.S.C. § 504 has specifically been used as a jurisdictional bar to the review of an EAJA petition. We are also mindful of the jurisprudential rule that administrative determinations are presumed to be reviewable. *See, e.g., United States v. Fausto*, —— U.S. ——, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988); *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986); *Gilley v. United States*, 649 F.2d 449 (6th Cir.1981).

The traditional standard for finding non-reviewability was stated in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The Court there held that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Id.* at 141, 87 S.Ct. at 1511 (citations omitted). This standard was reaffirmed by the Court in *Michigan Academy, supra*, 476 U.S. at 671, 106 S.Ct. at 2136. Our circuit has also applied a similar standard. *See, e.g., Gilley, supra*, 649 F.2d at 453 (requiring a "clear showing of congressional intent"); *Chelsea Community Hospital v. Michigan Blue Cross*, 630 F.2d 1131, 1134 (6th Cir.

1980) (requiring clear and convincing evidence).

At least some doubt, however, has been cast upon this standard by the Supreme Court's recent opinion in *United States v. Fausto,* —— U.S. ——, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). In *Fausto,* Justice Scalia, writing for a six to three majority stated that the presumption in favor of reviewability should be applied somewhat less rigorously. At issue in that case was the reviewability of certain personnel disciplinary actions under the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 *et seq.* (codified, as amended, in scattered sections of 5 U.S.C.). The Court stated that:

> As we have made clear elsewhere, the presumption favoring judicial review is not to be applied in the "strict evidentiary sense," but may be "overcom[e] whenever the congressional intent to preclude review is 'fairly discernible in the statutory scheme.'" *Block v. Community Nutrition Institute,* 467 U.S. [340] at 351, 104 S.Ct. [2450] at 2457 [81 L.Ed.2d 270] [1984] (quoting *Data Processing Service v. Camp,* 397 U.S. 150, 157 [90 S.Ct. 827, 832, 25 L.Ed.2d 184] ... (1970)).

*Id.* at ——, 108 S.Ct. at 675–76. The principle that evidence of congressional intent to preclude review can be taken from the statutory scheme as well as the legislative history does not represent a departure from past precedent. That such evidence need only be "fairly discernible" as opposed to clear and convincing does, however, suggest some greater flexibility in applying the pre-existing standard.

While the legislative history of the EAJA is plentiful, scant attention has been paid to the potential of section 504(c)(2) to deprive federal courts of jurisdiction to review EAJA petitions arising out of unreviewable underlying agency proceedings. The House Report states:

> Section 504(c)(2) provides that a party who is dissatisfied with an agency decision regarding attorneys' fees (either the failure to award or the amount of the award) may petition for leave to appeal to the United States court which would have jurisdiction to review the merits of the underlying decision of the agency adversary adjudication. Review was made discretionary in order to prevent the inundation of the federal courts by routine appeals from fee determinations in agency adjudications. For similar reasons, the denial of a petition for leave to appeal is not reviewable.

H.R.Rep. No. 1418, 96th Cong. 2d Sess. 16, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4984, 4995 [hereinafter House Report]. While the text of the report does not indicate a congressional intent to preclude review of EAJA determinations altogether, the cited language of the passage makes it clear that Congress was specifically concerned about the dangers of flooding the federal courts with EAJA cases.

*Fausto* also instructs courts to consider the statutory framework in which the issue of preclusion of review arises. —— U.S. ——, 108 S.Ct. at 674. The legislative history of the EAJA is replete with references to the potentially high costs of the EAJA and the need to monitor those costs closely. This fiscal concern indicates that Congress would look favorably upon an interpretation of the EAJA that conserved federal resources.[3]

---

**3.** The potential cost of the EAJA kept it from approval in the 95th Congress. The House Report states that "[n]o consensus could be reached on a bill during that Congress, since questions were raised about the need for such legislation and the high projected costs to the United States." House Report at 6, *reprinted in* 1980 U.S.Code Cong. & Admin.News at 4985. During the 96th Congress, both the Justice and the Treasury Department opposed the bill on the grounds of cost. *Id.* at 7, *reprinted in* 1980 U.S.Code Cong. & Admin.News at 4986.

Once the EAJA was approved, Congress was careful to provide for a close study and monitoring of its cost. House Report at 16, 19, *reprinted in* 1980 U.S.Code Cong. & Admin. News at 4995, 4998. Also, Congress only enacted the EAJA for a three year period in order to be able to evaluate its cost before determining whether to renew it. House Report at 13, *reprinted in* 1980 U.S.Code Cong. & Admin.News at 4992.

Even more compelling is the legislative history of the FECA itself. The House Report of the 1949 FECA amendments, in which the preclusion of review provision was first incorporated, stated that "[s]ince the proposed remedy [FECA] would afford employees and their dependents a planned and substantial protection, to permit other remedies by civil action or suits would not only be unnecessary, but would in general be uneconomical, from the standpoint of both the beneficiaries involved and the Government." S.Rep. No. 836, 81st Cong., 1st Sess., *reprinted in* 1949 U.S.Code Cong.Serv. 2125, 2136. The report also stated that:

> The saving to the Government by the elimination of costly and needless claims and litigation under the Federal Tort Claims Act, Suits in Admiralty Act, Public Vessels Act, and the like, which presently weigh heavily upon the Government and involve considerable expense to defend will be eliminated, offsetting in substantial part the increased cost in compensation benefits.

*Id.* at 2143.

The Eleventh Circuit in an appeal with analogous but not identical issues applying section 8128 to FECA attorney fees, took a broad view of that section's preclusive effect. In *Hamby v. Janer,* 808 F.2d 1433 (11th Cir.1987), that court affirmed the district court adjudication that it had no subject matter jurisdiction to hear an appeal from a determination of attorney fees in a FECA case. The attorney fees involved there had been awarded under 5 U.S.C. § 8127(b), which is a fee approval provision, as opposed to the EAJA, which is a fee shifting statute.[4] Hamby asked the district court to declare the fee awarded by the ECAB inadequate and unreasonable and to award a higher fee. The Eleventh Circuit affirmed the district court's finding that it had no subject matter jurisdiction to review the case, stating that:

> judicial review of the Secretary's decision regarding attorney's fees under FECA is

precluded in clear and unmistakable terms by § 8128(b) of that Act.... The clear import of this statute mandates our conclusion that the federal courts have no jurisdiction to review the Secretary's decision. Since a claim for attorneys' fees has no validity until approval by the Secretary, this procedure is, without question, the allowing of a payment under FECA.

*Id.* at 1434. To forestall the almost inevitable claim on petition for rehearing, we readily acknowledge the *Hamby* decision is different from the case here, both because review was precluded by section 8128 as opposed to section 504 and because it involved a fee approval statute, rather than a fee shifting statute. Nonetheless, *Hamby* in our view is still significant as demonstrating that courts are reluctant to review any aspect of a FECA determination, including the award of attorney fees. We believe that the preclusion provision of section 8128 is an important part of the statutory scheme in this case.

In conclusion, our review of the statutory framework as represented by both the express language of the EAJA and the FECA and the legislative history upon which these acts are premised makes it clear that Congress intended to preclude review of administrative denials of EAJA petitions in FECA cases. That legislative history makes it clear to us that Congress was, in both cases, concerned with limiting both cost and litigation. In our view, therefore, Congressional intent to preclude review of the EAJA petition in dispute in this case is sufficiently established to meet either the *Fausto* "fairly discernable" test or the older "clear and convincing evidence" standard of *Abbott Laboratories v. Gardner* and its progeny.

The judgment of the district court is AFFIRMED.

DAVID A. NELSON, Circuit Judge, concurring.

Although I concur in the judgment and in most of the reasoning of the court, I write

---

**4.** 5 U.S.C. § 8127(b) provides:

A claim for legal or other services furnished in respect to a case, claim, or award for com-

pensation under this subchapter is valid only if approved by the Secretary.

separately to note that I do not believe that the benefit determination with which we are concerned here could be an "adversary adjudication" within the meaning of the Equal Access to Justice Act even if *Escobar Ruiz v. INS*, 838 F.2d 1020 (9th Cir. 1988) (en banc), which involved deportation proceedings, was decided correctly.

It was undisputed, in *Escobar Ruiz*, that adjudications in deportation proceedings are "adjudications" within the meaning of 5 U.S.C. § 554. There could not possibly have been any dispute about this, because § 554 speaks of adjudications "required by statute to be determined on the record after opportunity for an agency hearing," and the pertinent immigration statute expressly requires that any "[d]etermination of deportability ... shall be made only upon a record made in a proceeding ... at which the alien shall have reasonable opportunity to be present...." 8 U.S.C. § 1252(b).

In the case at bar, by contrast, the plaintiff's entitlement to workers' compensation benefits was *not* required by statute to be determined "on the record." The adjudication with which we are concerned here, therefore, was not an adjudication under section 554 in any conceivable sense; unlike the adjudication in *Escobar Ruiz*, it was not even an adjudication "under the meaning" of § 554, to say nothing of being "governed" by § 554.

Whether or not the question thought to be presented in *Escobar Ruiz* was decided correctly, the Ninth Circuit's decision in that case gives Mr. Owens no help at all, as far as I can see. Our criticism of *Escobar Ruiz*, which may or may not be well taken, is clearly not central to our holding in the case at bar. Should a panel of our court be called upon to decide, at some future time, whether attorney fees may ever be awarded in connection with INS deportation adjudications, I do not believe that the panel would be foreclosed from reaching the same result as that reached by the Ninth Circuit in *Escobar Ruiz*.