## MATTER OF ANSELMO

### In Deportation Proceedings

### A-27529931

### *Decided by Board May 11, 1989*

(1) The United States Court of Appeals for the Ninth Circuit has held that the Equal Access to Justice Act ("EAJA") "covers deportation proceedings before the administrative agency as well as court proceedings reviewing deportation decisions." *Escobar Ruiz v. INS*, 838 F.2d 1020 (9th Cir. 1988) (en banc).

(2) Although the Board of Immigration Appeals disagrees with the court's holding, the decision of the Ninth Circuit that the EAJA applies to deportation proceedings must be followed in deportation proceedings arising within the jurisdiction of the Ninth Circuit.

(3) The Department of Justice regulations implementing the EAJA should be applied to EAJA attorney fee requests filed in conjunction with deportation proceedings arising within the jurisdiction of the Ninth Circuit.

ON BEHALF OF RESPONDENT:
Mark Vanderhout, Esquire
3689 18th Street
San Francisco, California 94110

Karen Z. Bovarnick, Esquire
345 Grove Street
San Francisco, California 94102

ON BEHALF OF SERVICE:
David M. Dixon
Appellate Counsel

BY:   Milhollan, Chairman; Dunne and Heilman, Board Members. Concurring in part and dissenting in part: Morris and Vacca, Board Members.

This matter arises as a result of deportation proceedings held within the jurisdiction of the United States Court of Appeals for the Ninth Circuit but solely concerns respondent's request for attorney fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 (1982). For the reasons set forth below, the record will be returned to the immigration judge to consider and decide the application for attorney fees and costs.

Although the Equal Access to Justice Act ("EAJA") was initially enacted in 1980, not until the Ninth Circuit's 1986 decision in *Escobar Ruiz v. INS*, 787 F.2d 1294 (9th Cir. 1986) ("*Escobar Ruiz I*"), was

there any ruling that the EAJA applied to deportation proceedings.[1] In that decision, the Ninth Circuit held that the EAJA "does apply to immigration proceedings before the [immigration judges] and the BIA." *Id.* at 1297. Thereafter, in *Escobar Ruiz v. INS,* 813 F.2d 283 (9th Cir. 1987) ("*Escobar Ruiz II*"), the court denied the Government's petition for rehearing, noting that the "conclusion that subsection 504(a) of the EAJA applies to deportation hearings remains unchanged." *Id.* at 293. The Ninth Circuit subsequently granted rehearing en banc and in *Escobar Ruiz v. INS,* 838 F.2d 1020 (9th Cir. 1988) ("*Escobar Ruiz III*"), held that "the EAJA covers deportation proceedings before the administrative agency as well as court proceedings reviewing agency deportation decisions." *Id.* at 1021. The Government did not seek further review of *Escobar Ruiz III.*

Subsequent to the Ninth Circuit's decision in *Escobar Ruiz I,* various requests for attorney fees were submitted administratively, principally in conjunction with deportation proceedings arising within the jurisdiction of the Ninth Circuit. Among the requests was the present application, which was filed seeking recovery of fees and costs incurred in preparation of the opposition to an Immigration and Naturalization Service appeal that was subsequently withdrawn by the Service. The motion for fees and costs was filed both with the Office of the Immigration Judge and this Board as respondent's counsel understandably was "not absolutely certain which office has jurisdiction."

On July 11, 1988, the Board requested the Service and counsel for the four respondents with EAJA fee requests then before the Board to provide their positions on the "threshold procedural and jurisdiction issues raised by these requests in view of the Ninth Circuit's decision ... and the absence of controlling regulations." The Government submitted its position in August 1988 and respondents' counsel submitted a consolidated brief to the Board in October 1988.

The Service position is that the Ninth Circuit's decision in *Escobar Ruiz III* left its ruling on the applicability of the EAJA to deportation proceedings in an "unappealable posture" because, the court having denied attorney fees to the respondent, the Service technically

---

[1] We are not aware of any applications for such fees being submitted administratively in conjunction with immigration proceedings prior to *Escobar Ruiz I.* In fact, there had been no request for fees in *Escobar Ruiz I* under the provisions of 5 U.S.C. § 504 (1982). Both the request before the court and the specific holding in *Escobar Ruiz I* concerned an application for fees under 28 U.S.C. § 2412(d)(1982). *Escobar Ruiz I, supra,* at 1296-98. In *Escobar Ruiz v. INS,* 813 F.2d 283 (9th Cir. 1987), however, the court stated that it had decided that the EAJA, "codified at 5 U.S.C. § 504 (1982) and 28 U.S.C. § 2412 (1982), applies to immigration proceedings before the immigration judge and the [Board]." *Id.* at 284.

prevailed in the matter. The Service further states that it is in the "strongest disagreement" with the court's ruling; that it will not comply with the ruling even in the Ninth Circuit; that "the Service has adopted a posture of nonacquiescence to bring the matter before the Supreme Court at the earliest possible moment"; that immigration judges are "without authority to do anything unless specifically authorized by statute or regulation"; and, that neither the law nor the regulations grant immigration judges the authority "to consider the award of attorney's fees under the EAJA." Respondents' counsel strongly object to the Service position, which is characterized as "anarchistic and [in] extra-legal disregard of the rule of law." Respondents' counsel submit that stare decisis requires the Board to follow Ninth Circuit precedent; that nonacquiescence should not be permitted as certiorari was available to the Service and it chose not to pursue it; and, in any event, that nonacquiescence is unconstitutional as it "violates the separation of powers doctrine fundamental to our form of government."

We initially note that we agree with the substantive position of the Service that deportation proceedings are not covered by the EAJA because they are not "adversary adjudications" within the definition of section 504(b)(1)(C) of that Act.

The EAJA, by permitting the recovery of attorney fees from the United States, constitutes a waiver of the Government's sovereign immunity. As the Supreme Court has reiterated, "[i]n analyzing whether Congress has waived the immunity of the United States, we must construe waivers strictly in favor of the sovereign." *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986); *see also Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685-86 (1983); *McMahon v. United States*, 342 U.S. 25, 27 (1951). Under this rule, the courts have found that the provisions of the EAJA must be construed strictly in favor of the United States. *Owens v. Brock*, 860 F.2d 1363, 1366 (6th Cir. 1988);[2] *Adamson v. Bowen*, 855 F.2d 668, 671 (10th Cir. 1988); *Long Island Radio Co. v. N.L.R.B.*, 841 F.2d 474, 477 (2d Cir. 1988); *Campbell v. United States*, 835 F.2d 193, 195 (9th Cir. 1987).

The EAJA in relevant part defines an "adversary adjudication" to mean "an adjudication under section 554 of [title 5] in which the position of the United States is represented by counsel or otherwise, but excludes an adjudication for the purpose of establishing or fixing a rate or for the purpose of granting or renewing a license." 5 U.S.C. § 504(b)(1)(C) (1982). Under its plain meaning, particularly if construed strictly in favor of the Government, the phrase "an adjudication

---

[2] In *Owens*, the Sixth Circuit concludes that the "*Escobar Ruiz* court ignores this rule." *Owens v. Brock, supra*, at 1366.

under section 554 of [title 5]" would connote an adjudication subject to the authority of or controlled by section 554 of title 5. And, in fact, this language has been interpreted by the Department of Justice and, most recently, by the United States Court of Appeals for the Sixth Circuit to apply to adjudications required by statute to be conducted under 5 U.S.C. § 554 (1982), rather than to proceedings "merely conducted in a similar manner." *Owens v. Brock, supra,* at 1366; *see also* 28 C.F.R. § 24.103 (1988).

Deportation proceedings are not subject to or controlled by section 554 of the Administrative Procedure Act, 5 U.S.C. §§ 551-59, 701-06 (1982) ("APA"). In fact, we find rather extraordinary the conclusion in *Escobar Ruiz III, supra,* that the treatment of the relationship between the Immigration and Nationality Act and the Administrative Procedure Act is "somewhat ambiguous" and that "*Marcello* [*v. Bonds,* 349 U.S. 302 (1955),] did not hold that deportation proceedings are excluded or exempted from section 554." *Id.* at 1025. This has been a settled question of law for over 30 years.[3]

In 1950, the Supreme Court held that section 5 of the Administrative Procedure Act (previously 5 U.S.C. § 1004 (1946))[4] applied to deportation proceedings. *Wong Yang Sung v. McGrath,* 339 U.S. 33 (1950). This ruling, however, was shortly "negated by a specific legislative exemption, apparently impelled by a finding by Congress that application of APA [hearing] requirements to deportation hearings would be too costly and cumbersome." 2 C. Gordon and H. Rosenfield, *Immigration Law and Procedure,* § 5.7a, at 5-77 (rev. ed. 1988) (footnotes omitted); *see also Clardy v. Levi,* 545 F.2d 1241 (9th Cir. 1976). This legislative exemption was included in the Supplemental Appropriation Act of 1951, Pub. L. No. 843, 1950 U.S. Code Cong. & Ad. News (64 Stat. 1052) 1038, 1042, and provided that "[p]roceedings under law relating to the exclusion or expulsion of aliens shall hereafter be without regard to the provisions of sections 5, 7, and 8 of the Administrative Procedure Act (5 U.S.C. 1004, 1006, 1007)."

When the Immigration and Nationality Act of 1952 was enacted, Congress prescribed specific procedures for deportation hearings and directed that they be the "sole and exclusive" procedures for determining the deportability of aliens. *See* section 242(b) of the Act, 8 U.S.C.

---

[3] We note that *Shaughnessy v. Pedreiro,* 349 U.S. 48 (1955), and *Wong Wing Hang v. INS,* 360 F.2d 715, 717 (2d Cir. 1966), which are cited in *Escobar Ruiz III,* are not relevant to the issue of whether deportation proceedings are exempt from the *hearing procedures* of the APA. Both cases involved section 10 of the APA of 1946, which concerned *judicial review* of agency action.

[4] 5 U.S.C. § 554 (1982) derives from 5 U.S.C. § 1004 (originally enacted as Act of June 11, 1946, ch. 324, § 5, 60 Stat. 239).

§ 1252(b) (1982). It was with this background that the Supreme Court ruled in *Marcello*:

> Section 242(b) expressly states: "The procedure [herein prescribed] shall be the sole and exclusive procedure for determining the deportability of an alien under this section." That this clear and categorical direction was meant to exclude the application of the Administrative Procedure Act is amply demonstrated by the legislative history of the Immigration Act.

and

> Exemptions from the terms of the Administrative Procedure Act are not lightly to be presumed in view of the statement in § 12 of the Act that modifications must be express, *cf. Shaughnessy v. Pedreiro*, [349 U.S. 48, 99 L. Ed. 1074, 75 S. Ct. 591]. But we cannot ignore the background of the 1952 immigration legislation, its laborious adaptation of the Administrative Procedure Act to the deportation process, the specific points at which deviations from the Administrative Procedure Act were made, the recognition in the legislative history of this adaptive technique and of the particular deviations, and the direction in the statute that the methods therein prescribed shall be the sole and exclusive procedure for deportation proceedings. Unless we are to require the Congress to employ magical passwords in order to effectuate an exemption from the Administrative Procedure Act, we must hold that the present statute expressly supersedes the hearing provisions of that Act.

*Marcello v. Bonds, supra*, at 309-10.

There would appear to be nothing ambiguous about this language. In fact, until *Escobar Ruiz III*, the only subsequent issue in this regard was whether the Board is subject to the hearing procedures of the APA. The two circuits to specifically address this issue held that the Board "*is also exempt* from APA requirements." *Giambanco v. INS*, 531 F.2d 141, 144 (3d Cir. 1976) (emphasis added); *see also Ho Chong Tsao v. INS*, 538 F.2d 667, 669 (5th Cir. 1976), *cert. denied*, 430 U.S. 906 (1977); *Cisternas-Estay v. INS*, 531 F.2d 155, 158-59 (3d Cir.), *cert. denied*, 429 U.S. 853 (1976).

Thus, because deportation proceedings are not adjudications "under section 554 of [title 5]," we agree with the position of the Service that the EAJA does not apply to these proceedings.[5] Even more fundamentally in this regard, however, we note that the Board and immigration judges (except as to the specific authority provided by statute) only have such authority as is created and delegated by the

---

[5] Immigration proceedings involve distinct policy considerations. The vast majority of these proceedings involve individuals who are neither citizens nor lawful permanent residents of the United States. Congress' balancing of the relationship between hearing rights and governmental costs is evidenced by section 292 of the Act, 8 U.S.C. § 1362 (1982), which provides:

> In any exclusion or deportation proceedings before a special inquiry officer and in any appeal proceedings before the Attorney General from any such exclusion or deportation proceedings, the person concerned shall have the privilege of being represented (*at no expense to the Government*) by such counsel, authorized to practice in such proceedings, as he shall choose. (Emphasis added.)

Attorney General.[6] *See* section 103 of the Act, 8 U.S.C. § 1103 (1982); 28 U.S.C. §§ 503, 509, 510 (1982); *Matter of Medina*, 19 I&N Dec. 734 (BIA 1988). Under section 103(a) of the Act, the Attorney General has the authority to issue regulations, and his determinations with respect to all questions of law are controlling. A regulation promulgated by the Attorney General has the force and effect of law as to this Board and immigration judges, and neither has any authority to consider challenges to regulations implemented by the Attorney General, any more than there is authority to consider constitutional challenges to the laws we administer. *See* sections 103(a), 236(a), 242(b) of the Act, 8 U.S.C. §§ 1103(a), 1226(a), 1252(b) (1982); 8 C.F.R. § 3.0 (1988); 28 C.F.R. Part 24 (1988); *Matter of Valdovinos*, 18 I&N Dec. 343 (BIA 1982); *Matter of Bilbao-Bastida*, 11 I&N Dec. 615 (BIA 1966), aff'd, *Bilbao-Bastida v. INS*, 409 F.2d 820 (9th Cir.), *cert. dismissed*, 396 U.S. 802 (1969); *Matter of Tzimas*, 10 I&N Dec. 101 (BIA 1962).

The Attorney General has determined that immigration proceedings do not come within the scope of the EAJA. *See* 28 C.F.R. § 24.103 (1988); *see also* 46 Fed. Reg. 48,921, 48,922 (1981) (interim rule with request for public comment).[7] Neither this Board nor an immigration judge has authority to consider a challenge to the Attorney General's determination in this regard. Thus, under existing law, absent a regulatory change or controlling court order, neither the Board nor an immigration judge has authority to consider an application for attorney fees under the provisions of the EAJA.[8]

The federal courts of course are under no such restraints. We are now faced with the en banc rulings by the Ninth Circuit in *Escobar*

---

[6] Even the specific grants of statutory authority to immigration judges in the Act (i.e., to conduct exclusion and deportation proceedings) are subject to limitations. For example, exclusion proceedings must be conducted in accordance with sections 235, 236, and 287(b) of the Act, 8 U.S.C. §§ 1225, 1226, and 1357(b) (1982), and "such regulations as the Attorney General shall prescribe." Section 236 of the Act. In deportation proceedings, the immigration judge may only make determinations "as authorized by the Attorney General" and the proceedings themselves must "be in accordance with such regulations, not inconsistent with this Act, as the Attorney General shall prescribe." Section 242(b) of the Act.

[7] The supplemental information published with the 1981 interim rule made clear that the omission of deportation and exclusion proceedings from the rule was intentional. None of the three public comments, including the extensive comments from the Administrative Conference of the United States, addressed this specific aspect of the interim rule. *See* 47 Fed. Reg. 15,774 (1982) (Supplementary Information).

[8] By separate decisions entered on May 12, 1989, we find for this reason that, absent regulatory change or court order, neither immigration judges nor the Board have authority either to find that the EAJA applies to any immigration proceedings outside the jurisdiction of the Ninth Circuit or that the EAJA applies to other than deportation proceedings (i.e., exclusion or rescission proceedings) arising within the Ninth Circuit.

*Ruiz III*, both that EAJA covers deportation proceedings before the immigration judges and the Board and that the Justice Department regulations are "misguided," "inconsistent with congressional intent," and based on a "mistaken" belief that deportation hearings are exempt from the requirements of the APA. The Service states that it has adopted a "posture of nonacquiescence" with the decision in *Escobar Ruiz III* within the Ninth Circuit. However, as noted by respondents' counsel, the Board has not followed a practice of nonacquiescence in decisions of a circuit court in cases arising within the jurisdiction of that circuit. We are not required to accept an adverse determination by one circuit court of appeals as binding throughout the United States. *State of Ga. Dep't of Medical Assist. v. Bowen*, 846 F.2d 708, 710 (11th Cir. 1988); *Ry. Labor Executives' Ass'n v. I.C.C.*, 784 F.2d 959, 964 (9th Cir. 1986); *Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985). Where we disagree with a court's position on a given issue, we decline to follow it outside the court's circuit. But, we have historically followed a court's precedent in cases arising in that circuit. *Matter of Torres*, 19 I&N Dec. 371 (BIA 1986); *Matter of Herrera*, 18 I&N Dec. 4 (BIA 1981); *Matter of Patel*, 17 I&N Dec. 597 (BIA 1980); *Matter of Bonnette*, 17 I&N Dec. 587 (BIA 1980); *Matter of Bowe*, 17 I&N Dec. 488 (BIA 1980, 1981); *Matter of Kondo*, 17 I&N Dec. 330 (BIA 1980); *Matter of Cienfuegos*, 17 I&N Dec. 184 (BIA 1979); *Matter of Anwo*, 16 I&N Dec. 293 (BIA 1977); *Matter of Gonzalez*, 16 I&N Dec. 134 (BIA 1977); *see also Matter of Amado and Montiero*, 13 I&N Dec. 179 (BIA 1969).

The only instance in which we declined to follow a circuit court's precedent in a subsequent case within the circuit arose in an unusual factual setting. In *Matter of Mangabat*, 14 I&N Dec. 75 (BIA 1972), *aff'd*, 477 F.2d 108 (9th Cir.), *cert. denied*, 414 U.S. 841 (1973), the Ninth Circuit position the Board declined to apply represented a minority position among the circuits; the position had been challenged by the Solicitor General in a petition for certiorari; the Supreme Court had granted the petition for certiorari; but, the case in which certiorari had been granted was terminated "inconclusively" when the alien left the United States during the appeal process. The Board stated:

> In declining to apply the cited Ninth Circuit decisions in this and other cases reviewable in that circuit, we mean no disrespect for that court. Since the issues have already been crystallized, briefed and defined in the cited cases, our action now should pave the way for prompt decision in that court and prompt review in the Supreme Court. The construction of section 241(f) which we here apply is one which the Attorney General has approved, and his decision is binding on us. The Ninth Circuit's view represents a minority position among the circuits. The Solicitor General's challenge to it in petitioning for certiorari in *Vitales* [*v. INS*, 443 F.2d 343 (9th Cir. 1971),] negates any notion of administrative acquiescence. The Supreme Court's action in granting certiorari indicates that a substantial question is presented.

31

*Matter of Mangabat, supra,* at 78. That *Mangabat* represented an unusual situation tied to its particular facts was made clear by the Board in *Matter of Bowe, supra,* and *Matter of Gonzalez, supra.* The fact that the Service disagrees with the Ninth Circuit's holding does not leave the Board or immigration judges free to decline to apply that precedent to cases arising within the circuit. *See Lopez v. Heckler,* 725 F.2d 1489 (9th Cir. 1984) (concerning an "announced" policy of nonacquiescence by the Secretary of Health and Human Services). On the record before us, we find that the decision of the Ninth Circuit that the EAJA does apply to deportation proceedings must be followed in deportation cases arising within the Ninth Circuit.

The remaining question is what procedures should be followed in considering fee requests in deportation cases arising within the Ninth Circuit in order to comply with the court's holding. The Service has presented no position on this issue, other than stating that immigration judges have no authority to consider such requests. Respondents' counsel submit that fee motions under the EAJA should follow existing procedures in 8 C.F.R. Part 3 (1988) regarding the exercise of jurisdiction over deportation and related matters and that fee motions should follow the procedures of the "model rules" for the implementation of the EAJA in agency proceedings (1 C.F.R. Part 315 (1988)).

In our view, the most appropriate and practical resolution of this issue, particularly in view of the Ninth Circuit's finding that the Department of Justice regulations are "inconsistent with congressional intent," is to read the court's order as including deportation cases within the scope of the existing Department of Justice EAJA regulations. Accordingly, we find that the procedures of 28 C.F.R. Part 24 (1988) should be applied to EAJA fee requests filed in conjunction with deportation proceedings arising in the Ninth Circuit. These are the regulations that apply to all other EAJA fee requests before the Department and the regulations that will apply if the position of the Ninth Circuit is ultimately given nationwide effect through departmental, judicial, or congressional action.

The Department regulations provide that filings and service of documents shall be made "in the same manner as other pleadings in the proceedings," that the determination will be made by the official who presided at the adversary adjudication, and that the decision of the adjudicative officer will be reviewed to the extent permitted by law by the Department in accordance with the Department's procedures for the type of proceedings involved. 28 C.F.R. §§ 24.301, 24.306, 24.307 (1988).

Under the provisions of 8 C.F.R. Part 3 (1988) and 28 C.F.R. Part 24 (1988), we find that the fee application in this case should be considered by the immigration judge. As the Service withdrew its

appeal on the merits in this case, the initial decision of the immigration judge is "final to the same extent as though no appeal had been taken." 8 C.F.R. § 3.4 (1988). Any further substantive motion in this case would be within the jurisdiction of the immigration judge to consider. *See* 8 C.F.R. §§ 3.2, 242.22 (1988); *Matter of Mladineo*, 14 I&N Dec. 591 (BIA 1974). Accordingly, considering the provisions of 28 C.F.R. §§ 24.301 and 24.306 (1988), we find that the application is properly filed with the Office of the Immigration Judge and that the immigration judge is the "adjudicative officer" who should issue a decision on the application. Therefore, the record in this case is returned to the immigration judge for her decision whether the application satisfies the requirements of law and regulations.

**ORDER:**     The record is returned to the Office of the Immigration Judge for consideration of and a decision on respondent's request for attorney fees and costs.

*CONCURRING IN PART AND DISSENTING IN PART:*     James P. Morris, Board Member

I concur in the decision of the majority except insofar as it finds that immigration judges and the Board have authority to consider requests for attorney fees and costs under the Equal Access to Justice Act ("EAJA") resulting from deportation proceedings held within the jurisdiction of the United States Court of Appeals for the Ninth Circuit. I respectfully dissent as to this latter aspect of the majority's decision.

As the majority properly finds, the Board and immigration judges (except as to the specific authority provided by law), only have such authority as is created and delegated by the Attorney General. Regulations promulgated by the Attorney General have the force and effect of law as to this Board and immigration judges. *See* sections 103(a), 236(a), 242(b) of the Immigration and Nationality Act, 8 U.S.C. §§ 1103(a), 1226(a), 1252(b) (1982); 8 C.F.R. § 3.0 (1988); 28 C.F.R. Part 24 (1988); *Matter of Medina*, 19 I&N Dec. 734 (BIA 1988); *Matter of Valdovinos*, 18 I&N Dec. 343 (BIA 1982); *Matter of Bilbao-Bastida*, 11 I&N Dec. 615 (BIA 1966), *aff'd*, *Bilbao-Bastida v. INS*, 409 F.2d 820 (9th Cir.), *cert. dismissed*, 396 U.S. 802 (1969); *Matter of Tzimas*, 10 I&N Dec. 101 (BIA 1962). The Attorney General has expressly determined that immigration proceedings do not come within the scope of the EAJA and has implemented a regulation to that effect. *See* 28 C.F.R. § 24.103 (1988). Thus, under present law, absent a change to this regulation or a final court order directing an immigration judge or the Board to consider and adjudicate an application for attorney fees under EAJA, I would find no statutory or

regulatory authority giving jurisdiction to an immigration judge or the Board to do so.

Here, the pertinent regulations governing the immigration judges and the Board remain in force and effect and there is no court order clearly directing either an immigration judge or the Board to consider and adjudicate an application for attorney fees and costs under the EAJA. The Ninth Circuit's orders in *Escobar Ruiz v. INS*, 787 F.2d 1294 (9th Cir. 1986), *reh'g denied*, 813 F.2d 283 (9th Cir. 1987), *aff'd*, 838 F.2d 1020 (9th Cir. 1988) (en banc), do not specify that *the Board and immigration judges* have authority to award attorney fees under the EAJA, although that conclusion might be inferred from the decisions. However, this issue was not specifically addressed and discussed in any of the three *Escobar Ruiz* decisions. The argument of respondent that the regulations authorize the immigration judge to award such fees is based upon ambiguous language of a general nature, which does not overcome the clear failure of the regulations to delegate this authority to the immigration judges and the Board. While the Ninth Circuit decisions hold that the EAJA applies to deportation proceedings, they do not circumscribe the power of the Attorney General to make provision for the method by which such awards may be determined. Accordingly, I would hold that the Board and immigration judges lack authority to make such awards, and I would certify the decision of the Board to the Attorney General under 8 C.F.R. § 3.1(h) (1988) so that he could decide as a matter of policy how this matter should be resolved.

*CONCURRING OPINION*: Fred W. Vacca, Board Member

I concur in the foregoing opinion.