# In re Julio Augusto FUENTES-Martinez, Respondent

## File A18 110 320 - Napanoch

*Decided March 18, 1997*
*Decided as Amended April 25, 1997*

### U.S. Department of Justice
### Executive Office for Immigration Review
### Board of Immigration Appeals

(1) A child who has satisfied the statutory conditions of section 321(a) of the Immigration and Nationality Act, 8 U.S.C. § 1432(a) (1994), before the age of 18 years has acquired derivative United States citizenship regardless of the child's age at the time the amendments to that section by the Act of October 5, 1978, Pub. L. No. 95-417, 92 Stat. 917 ("1978 Amendments"), took effect.

(2) The respondent, who was 16 years and 4 months of age when his mother was naturalized, and who resided in the United States at that time as a lawful permanent resident while under the age of 18 years, became a derivative United States citizen, even though he was already 18 years old when the 1978 Amendments took effect.

Pro se

BEFORE: Board Panel: SCHMIDT, Chairman; ROSENBERG, Board Member; MILLER, Alternate Board Member.

ROSENBERG, Board Member:

This is a timely appeal from the June 12, 1996, decision of the Immigration Judge who denied the respondent's request for termination of the proceedings based upon the respondent's claim that he derived United States citizenship pursuant to section 321(a) of the Immigration and Nationality Act, 8 U.S.C. § 1432(a) (1994), which was amended from its previous version by the Act of October 5, 1978, Pub. L. No. 95-417, 92 Stat. 917 ("1978 Amendments"). The Immigration Judge found the respondent deportable as charged, denied his request for a waiver under section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994), and ordered him deported. The respondent has appealed from that decision. The appeal will be sustained and the proceedings will be terminated.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The respondent is a 37-year-old native of Honduras, born in that country on January 7, 1960. He was admitted to the United States as a lawful permanent resident on October 10, 1968, when he was 8 years old, and he has resided in this country for nearly 30 years.[1]

The respondent's mother was naturalized on May 19, 1976, when the respondent was 16 years old. Previously, his parents had divorced and his mother had been granted custody of the respondent.

On April 10, 1995, the respondent was convicted in the Supreme Court of the State of New York, County of Bronx, of the offense of attempted criminal sale of a controlled substance, cocaine, in violation of section 110-220.39 of the New York Penal Law. As a result of the respondent's criminal conviction, the Immigration and Naturalization Service issued an Order to Show Cause and Notice of Hearing (Form I-221), charging him with deportability under section 241(a)(2)(B)(i) of the Act, 8 U.S.C. § 1251(a)(2)(B)(i) (1994), as an alien convicted of a controlled substance violation, and under section 241(a)(2)(A)(iii), as an aggravated felon.

At his deportation hearing, the respondent denied alienage and requested termination of the proceedings, claiming that he derived United States citizenship under section 321(a) of the Act.[2] In support of this claim, the respondent submitted documentation to prove that his mother was naturalized on May 19, 1976, and that his natural parents had been divorced in September 1972, with his mother being granted sole legal custody of the respondent. In addition, the record reflects that the respondent had been lawfully admitted

---

[1] The respondent was married to Evelyn Bartee-Fuentes on June 5, 1990. He and his wife are the parents of twin girls born July 24, 1987.

[2] Section 321(a) of the Act, as amended by the 1978 Amendments, provides in pertinent part:

A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:

(1) The naturalization of both parents; or

(2) The naturalization of the surviving parent if one of the parents is deceased; or

(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

for permanent residence in 1968 and was residing in the United States in lawful status at the time his mother was naturalized.

In further support of his claim, the respondent provided the January 23, 1996, sworn affidavit of his stepfather, Alberto Gutierrez, who was naturalized on April 13, 1977. Mr. Gutierrez stated that he met the respondent's mother in 1965, and that they married in 1974. He also stated that in 1968 the respondent came to the United States, where he resided with his mother and Mr. Gutierrez and was supported by the latter until he reached legal age. There was no suggestion that any of the respondent's evidence was not bona fide or probative of the facts it purported to establish.

Although the respondent acknowledged that he was 4 months over the age of 16 years at the time his mother was naturalized,[3] he noted that section 321 of the Act was amended in 1978 to bestow citizenship if the naturalization of a parent occurs while a child is under the age of 18 and the child begins to reside in this country as a permanent resident while under the age of 18. On the basis of this legislative change, the respondent maintained that although he was over the age of 18 years at the time of the passage of the Act of October 5, 1978, which raised the qualifying age from 16 to 18, he was under 18 years of age at the time his mother was naturalized. He argued that he derived United States citizenship from his mother under section 321(a) of the Act, as amended.

The Service requested an opportunity to obtain additional documents to verify the respondent's relationship to his mother, her divorce, and her custodial authority, indicating that it would make a timely motion for termination if convinced that the respondent was a derivative citizen of the United States. While the Service raised no objection to the documents provided, it appears that the Service concluded that the respondent did not derive United States citizenship because he was over the age of 18 at the time the 1978 Amendments took effect.

## II. DECISION OF THE IMMIGRATION JUDGE

The Immigration Judge concluded that the respondent did not benefit from the 1978 Amendments since he was already 18 at the time of their enactment. As the result of his conclusion that the 1978 amendment, increasing the age of eligibility to acquire citizenship from 16 to 18 years, were not applicable to the respondent, the Immigration Judge found that alienage was established and that the respondent was deportable as charged.

---

[3] At the time of the respondent's mother's naturalization, which occurred prior to the 1978 Amendments, section 321(a) of the Act stated that a child born outside the United States acquired United States citizenship upon the naturalization of the parent or parents having legal custody, if such naturalization occurred while the child was under the age of 16 years and such child, while under the age of 16 years, began to reside in the United States as a lawful permanent resident.

In addition, the respondent had filed an application for permission to return to an unrelinquished domicile, seeking a waiver of his deportability under section 212(c) of the Act. However, the Immigration Judge determined that the respondent had served an aggregate of over 5 years' imprisonment at the time of his hearing, which barred him from establishing eligibility for a waiver under section 212(c) of the Act. *See Matter of A-A-*, 20 I&N Dec. 492, 497, 499 (BIA 1992).

Furthermore, the Immigration Judge pretermitted the respondent's application for a waiver under section 212(c) of the Act, finding that at the time of the respondent's final hearing on June 12, 1996, the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (effective Apr. 24, 1996) ("AEDPA"), precluded him from establishing eligibility. *See Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996; A.G. 1997) (holding that an alien who is deportable on the grounds articulated in section 440(d) of the AEDPA, 110 Stat. at 1277, is precluded from obtaining a waiver under section 212(c) of the Act, without regard to whether the application was filed or pending before the AEDPA's effective date). Consequently, he ordered the respondent deported and this appeal followed.

## III.  INTERPRETATION OF SECTION 321(a) OF THE ACT

A child's acquisition of citizenship on a derivative basis occurs by operation of law and not by adjudication. No application is filed, no hearing is conducted, and no certificate is issued when such citizenship is acquired.[4] The actual determination of derivative citizenship under section 321(a) of the Act may occur long after the fact, in the context of a passport application or a claim to citizenship made in deportation proceedings.

Section 321(a) of the Act states that "a child born outside of the United States" of alien parents (or of one alien parent and a citizen parent who has subsequently lost citizenship) "becomes a citizen" upon the fulfillment of three statutory conditions. These are, in plain terms, that the naturalization of the required parent(s) occurs, that the parent(s)' naturalization takes place while the child is under the age of 18 years, and that the child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the parent(s)' naturalization, or thereafter begins to reside in this country permanently while under the age of 18 years. *See supra* note 2.

Previously, the Department of State, which also considers citizenship claims, had concluded that the 1978 Amendments were not intended to be retroactive. *See* Vol. 7 Foreign Affairs Manual, Part II, § 1153.4(c) (TL:CON-13 Dec. 31, 1984) ("FAM"). The State Department originally had

---

[4] A person who claims to have derived United States citizenship by naturalization of a parent may apply to the Attorney General for a certificate, but a certificate is not required. Section 341 of the Act, 8 U.S.C. § 1452 (1994); *see also* Immigration and Naturalization Service Interpretations 340.1.

been of the opinion that section 4 of the 1978 Amendments was not retroactive and would not benefit a child whose parents or custodial parent had been naturalized after the child's 16th birthday and before October 5, 1978. Under this interpretation, the respondent would not derive citizenship from his mother even though he was under the age of 18 at the time of her naturalization.

However, there is no specific statutory language restricting the universe of potential derivative citizens to whom the 1978 Amendments may apply. The 1978 Amendments were curative in nature, as underscored by the legislative history. *See* H.R. Rep. No. 1301, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.C.C.A.N. 2301, 2309-10. The primary legislative history of the Act consists of a letter from the Department of Justice to the Chair of the House Judiciary Committee, providing the Service's views of the proposed amendment as being remedial in nature and favoring its enactment, as follows:

> Currently a person is not eligible to file a petition for naturalization in his own behalf under section 334 of the act, 8 U.S.C. 1445, until reaching the age of 18. Thus, there is a 2-year period during which a child is not able to derive citizenship by reason of his parents' naturalization, but is not able to file his own petition for naturalization either. The only procedure available during this period is for the parent or parents to file a formal petition for the child's naturalization as provided in section 332 of the act, 8 U.S.C. 1433. . . . [T]his procedure is both cumbersome and unnecessary. Young people between the ages of 16 and 18 should be allowed to derive citizenship automatically under sections 320 and 321.

On reconsideration of the proper reach of the 1978 Amendments, both the Department of State and the Immigration and Naturalization Service recently modified their interpretation of sections 320 and 321 of the Act, 8 U.S.C. §§ 1431 and 1432 (1994). *See, e.g.*, Department of State *Passport Bulletin - 96-18*, issued November 6, 1996, entitled "New Interpretation of Claims to Citizenship Under Section 321(a) of the INA."[5] That bulletin reads in pertinent part:

> Through subsequent discussions, [the interested agencies] have agreed on what we believe to be a more judicious interpretation of Section 321(a). We now hold that, as long as all the conditions specified in Section 321(a) are satisfied before the minor's 18th birthday, the order in which they occur is irrelevant. Citizenship would be acquired on the date the last condition is satisfied. (Please note: . . . qualification in the case of an adopted child who claims citizenship under Section 321(b) INA . . . . )
>
> . . . .

---

[5] *Passport Bulletin - 96-18* "supersedes and cancels *Passport Bulletin - 93-2*" which contains a previous reading of the 1978 Amendments; *see also* Levy, *Naturalization Handbook,* 201-02 (Clark Boardman Callaghan 1997) (noting that the Department of State, having already determined that the 1978 Amendments applied to a child of a naturalized parent who was between the ages of 16 and 18 when the amendment became law, was presently considering reversing its position as to the amendment's applicability to hold that it applied without regard to the child's age at the time of the 1978 Amendments).

P.L. 95-417, effective October 5, 1978, amended Section 321 INA to raise, from 16 to 18, the age upon which all the conditions of the law had to be fulfilled in order for citizenship to be acquired. The Department and INS now interpret this amendment to apply to *any person* claiming citizenship through a parent(s)' naturalization under Section 321 who can establish that, after December 24, 1952 (the effective date of the INA) and before the person's age of 18 all the conditions of the law were satisfied.

The bulletin concludes, holding as follows:

*We do not consider the date the law was amended (October 5, 1978) to have any significance in the adjudication of such claims. . . . We now hold that the amendment is to be applied retroactively to the effective date of the INA.* [Emphasis added.][6]

A recent interpretation issued by the Immigration and Naturalization Service Naturalization Division on February 18, 1997, concurs and notes that concurrence also has been received by the Service General Counsel and Field Operations. In a cable distinguishing a wire of July 9, 1996, the Service thus clarifies the requirements for derivative citizenship, stating:

The following information pertains to *all* citizenship claims under Section 321(a) of the Act. (The July 9 wire pertains only to children who were over age 16 and under age 18 when the October 5, 1978 amendment took effect).

. . . .

P.L. 95-417, effective October 5, 1978, amended Section 321 of the INA to raise, from 16 to 18, the age upon which all the conditions of the law had to be fulfilled in order for citizenship to be acquired. This amendment applies to *any person* claiming citizenship through a parent(s)' naturalization under Section 321 who can establish that, after December 24, 1952 (the effective date of the INA) and before the person reaches the age of 18 all the conditions of the law were satisfied. The amendment is to be applied retroactively to the effective date of the INA.

## IV. CONCLUSION

We find that on the record before us, the respondent has fulfilled each of the qualifying conditions of section 321(a) of the Act, during the period of time after December 24, 1952, and before he reached the age of 18. We hold, therefore, that the respondent is a citizen of the United States as defined by the statute and properly interpreted by the agencies which are charged with interpreting and administering the statute. Under the law in effect today, the respondent acquired citizenship at age 16 and 4 months, when his mother was naturalized in 1976, and he has been a citizen of the United States since that time.

The Immigration and Nationality Act applies only to noncitizens. The Service has no jurisdiction over the respondent, who is a citizen, either to detain

---

[6] We have been advised that the Foreign Affairs Manual is in the process of being revised to specify that the two provisions of the 1978 Amendments, amending sections 320 and 321 of the Act, are retroactive to the December 24, 1952, enactment of the Act, and that persons who can establish that they fulfilled the amended provisions may be documented as United States citizens.

him or to seek to deport him, and we do not have jurisdiction either to find him deportable or to order him deported.

**ORDER:** The appeal is sustained and the proceedings are terminated.