# In re Jesus Enrique RODRIGUEZ-TEJEDOR, Respondent

File A30 212 057 - Huntsville

*Decided July 24, 2001*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  The automatic citizenship provisions of section 320 of the Immigration and Nationality Act, 8 U.S.C. § 1431 (1994), as amended by the Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631 ("CCA"), are not retroactive and, consequently, do not apply to an individual who resided in the United States with his United States citizen parents as a lawful permanent resident while under the age of 18 years, but who was over the age of 18 years on the CCA effective date.

(2)  The respondent, who resided in the United States with his United States citizen adoptive parents as a lawful permanent resident while under the age of 18 years, but who was over the age of 18 years on the CCA effective date, is ineligible for automatic citizenship under section 320 of the Act.

FOR RESPONDENT: Nora E. Norman, Esquire, Huntsville, Texas

AMICUS CURIAE[1]: Thomas E. Moseley, Esquire, Newark, New Jersey

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Jeffrey L. Romig, Appellate Counsel

BEFORE: Board En Banc:  SCHMIDT, HURWITZ, VILLAGELIU, GUENDELSBERGER, MATHON, GRANT, MOSCATO, MILLER, BRENNAN, OSUNA, and OHLSON, Board Members. Concurring Opinions: DUNNE, Vice Chairman; joined by SCIALABBA, Acting Chairman; HOLMES, FILPPU, COLE, and JONES, Board Members; ESPENOZA, Board Member. Concurring and Dissenting Opinion: ROSENBERG, Board Member.

GRANT, Board Member:

In a decision dated May 4, 2000, the Immigration Judge found the respondent deportable under section 241(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2)(A)(iii) (1994), as an alien convicted of an aggravated

_____

[1]  This Board acknowledges with appreciation the thoughtful arguments raised in the brief submitted by amicus curiae.

felony, and under section 241(a)(4) of the Act, 8 U.S.C. § 1251(a)(4) (1988),[2] as an alien convicted of a crime involving moral turpitude. Finding the respondent ineligible for relief from deportation, the Immigration Judge ordered him deported from the United States to Mexico. The respondent has appealed. Oral argument was heard in this matter on April 26, 2001. The appeal will be dismissed.

## I.  BACKGROUND

The facts of this case are undisputed. The respondent was born on December 25, 1960, in Mexico. On April 15, 1968, he was adopted by his paternal grandparents. His adoptive father is a United States citizen by birth. His adoptive mother, who died in 1994, was a lawful permanent resident. He entered the United States on or about July 27, 1972, as a lawful permanent resident. On October 25, 1989, the respondent was convicted of aggravated sexual assault of a child and voluntary manslaughter, for which offenses he was sentenced to imprisonment for 35 years and 20 years, respectively. Based on these convictions, the Immigration and Naturalization Service issued an Order to Show Cause and Notice of Hearing (Form I-221) on April 10, 1990, alleging that the respondent was deportable.

At his deportation hearing, the respondent denied alienage, claiming that he was eligible for a certificate of citizenship under section 322(a) of the Act, 8 U.S.C. § 1433(a) (1994). Proceedings were adjourned three times to give the Service an opportunity to adjudicate the respondent's Application for Certificate of Citizenship (Form N-600), which the record reflects he filed on April 30, 1997. On May 24, 1999, the Service denied the respondent's application because he was over the age of 18 at the time it was filed.

The respondent then claimed to have acquired citizenship under section 301(g) of the Act, 8 U.S.C. § 1401(g) (1994). The Immigration Judge concluded that the respondent neither acquired citizenship under section 301(g) of the Act nor derived citizenship under section 322(a) of the Act. Having determined that alienage was established, the Immigration Judge found the respondent deportable as charged and ordered him deported from the United States to Mexico. This appeal followed.

## II.  ISSUES ON APPEAL

On appeal, the respondent contends, as he did at the deportation hearing, that he is eligible for a certificate of citizenship under section 322 of the Act and

---

[2]  Section 241(a)(4) of the Act was revised and redesignated as section 241(a)(2)(A)(ii) of the Act by section 602(a) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5077-80.

that he acquired citizenship under section 301(g) of the Act. In response, the Service concurs with the Immigration Judge's decision and urges us to adopt that decision. We will address each issue in turn.

First, section 322(a), as it was in effect at the time the respondent filed his Application for Certificate of Citizenship, clearly stated that an individual must be under 18 years of age at the time the application for such certificate is filed by the citizen parent of the individual. Similarly, the regulation set forth at 8 C.F.R. § 322.2(a) (1997) clearly states that "a child on whose behalf an application for naturalization has been filed . . . must: (1) Be unmarried and under 18 years of age, both at the time of application and at the time of admission to citizenship . . . ." In the instant case, the respondent did not file his N-600 application until April 1997, when he was 36 years old.

Second, we concur with the Immigration Judge that the respondent did not acquire United States citizenship under section 301(g) of the Act, because that provision requires that the child be born of a United States citizen. There is no indication that this section applies to an adopted child such as the respondent.

The respondent's appeal would have been promptly dismissed but for the recent enactment of the Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631 ("CCA"). Depending on the effect given to the CCA's amendment of section 320 of the Act, 8 U.S.C. § 1431 (1994), pertaining to automatic acquisition of citizenship by foreign-born children adopted by United States citizens, the respondent may or may not be deemed to have acquired United States citizenship at the time of his admission as a lawful permanent resident. We therefore turn to consideration of this issue.[3]

As a preliminary matter, we recognize that shortly after we heard oral argument in this case, the United States Court of Appeals for the Fifth Circuit ruled that the CCA did not act to retroactively confer citizenship upon individuals such as the respondent in this case. *See Nehme v. INS*, 252 F.3d 415 (5th Cir. 2001); *accord Hughes v. Ashcroft*, 2001 WL 699357 (9th Cir. 2001). Because this case arises within the jurisdiction of the Fifth Circuit, the decision in *Nehme* is binding regarding our specific holding in this case. *See Matter of Anselmo*, 20 I&N Dec. 25 (BIA 1989). Nevertheless, because this issue will inevitably arise outside the Fifth Circuit, we proceed, in the interest of establishing a uniform nationwide rule, to set forth our independent analysis of this issue.[4]

---

[3] For purposes of clarification, we note that the pre-CCA sections 320 and 321 of the Act were not implicated in this case because neither of the respondent's adoptive parents became United States citizens through naturalization.

[4] The parties have each filed a supplemental brief with regard to the Fifth Circuit's decision in *Nehme v. INS*, *supra*. The Service argues that the decision is binding on the disposition of this case. The respondent contests this, arguing that the present case is distinguishable

(continued...)

We also recognize that, since we heard oral argument in this case, the Service has issued an interim rule implementing Title I of the CCA. Children Born Outside the United States; Applications for Certificate of Citizenship, 66 Fed. Reg. 32,138 (2001). Consistent with our decision in this case, the Supplementary Information section specifically provides that Title I of the CCA does not apply to foreign-born children who are 18 years or older on February 27, 2001. 66 Fed. Reg. at 32,139. The interim rule at 8 C.F.R. § 320.2(a)(2) provides that individuals must meet all statutory requirements, including the age requirement, on or after February 27, 2001, to be eligible for citizenship under section 320 of the Act. 66 Fed. Reg. at 32,144. Because the Board has independently reached the same conclusion as the Service, we need not address the issue, raised at oral argument, whether Service regulations interpreting a statutory provision are binding on this Board. We do not share the concerns expressed in the separate opinion of Board Member Rosenberg that the Service's actions in promulgating this regulation suggest an "inherent conflict" between its status as both a rule-making agency and a litigant before this Board, and that such actions call into question the integrity of our quasi-judicial role. *See* 8 C.F.R. § 3.1(g) (2001). The Service's motion to hold these proceedings in abeyance pending the publication of its regulations implementing Title I of the CCA will be denied as moot.

## III. CHILD CITIZENSHIP ACT OF 2000

In Title I of the CCA, Congress replaced the automatic citizenship provisions set forth in former sections 320 and 321 of the Act, 8 U.S.C. §§ 1431 and 1432 (1994), with a more generous provision now codified at section 320 of the Act. Section 321 of the Act was repealed. With these amendments, Congress intended to "streamline" automatic citizenship for children born abroad who are subsequently adopted by a United States citizen parent, or at least one of whose

---

[4](...continued)

from *Nehme* because the respondent here is the adopted child of a United States citizen by birth, the precise category of individuals that Congress intended to benefit by enacting the CCA. The respondent in *Nehme*, by contrast, was the biological child of a father who subsequently became a naturalized citizen. The respondent further argues that the legislative history of the CCA clearly shows an intent to have a retroactive benefit in favor of individuals in the respondent's position. In response, we see nothing in the text of the CCA's amendments to the Act, particularly revised section 320, that would differentiate between the adopted children of United States citizens at birth and the biological children of foreign-born parents who later naturalize. Both are covered within the scope of this provision. Regarding the issue of retroactivity, for the reasons set forth in this decision, we disagree with the respondent's arguments.

parents subsequently naturalized as a United States citizen. H.R. Rep. No. 106-852, at 4 (2000), *reprinted in* 2000 U.S.C.C.A.N. 1499, 1500-01; H.R. 2883, 106th Cong. (2000). The four sections of Title I of the CCA are summarized below.

Section 101 of the CCA amended section 320 of the Act to provide automatic citizenship for a child born outside the United States when all of the following conditions have been fulfilled: (1) at least one parent is a United States citizen; (2) the child is under 18 years old; and (3) the child is residing in the United States in the legal and physical custody of the United States citizen parent pursuant to a lawful admission for permanent residence. This provision applies to a child adopted by a United States citizen, as defined in section 101(b)(1)(E) or (F) of the Act, 8 U.S.C. § 1101(b)(1)(E) or (F) (1994).[5]

Section 102 of the CCA amended section 322 of the Act to provide for the issuance of a certificate of naturalization to a child born outside the United States when the following conditions are met: (1) at least one parent is a United States citizen who has met certain physical presence requirements or has a citizen parent who has met such requirements; (2) the child is under 18 years of age; (3) the child is residing outside the United States in the legal and physical custody of the citizen parent, is temporarily present in the United States pursuant to a lawful admission, and is maintaining such lawful status.

Section 103 of the CCA repealed the derivative citizenship provisions of former section 321 of the Act. This subject matter is now addressed by section 320 of the Act, as revised by the CCA.

Section 104 of the CCA set forth the effective date provision for Title I:

> The amendments made by this title shall take effect 120 days after the date of the enactment of this Act, and shall apply to individuals who satisfy the requirements of section 320 or 322 of the Immigration and Nationality Act, as in effect on such effective date.

---

[5]  A comparison of new section 320 of the Act with former sections 320 and 321 of the Act demonstrates the streamlining effect of these amendments. In the case of a child born abroad to alien parents, the subject of former section 321 of the Act, new section 320 allows that child to acquire citizenship upon the naturalization of *one* such parent, as opposed to the requirement in former section 321 that *both* parents (or a sole surviving parent in the case of death, or a sole parent having legal custody in the case of a legal separation, or the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation) be naturalized. In the case of a child born abroad and adopted by United States citizen parents, new section 320 effectively eliminates the requirement set forth in former section 322 of the Act that the adoptive parents apply for a certificate of citizenship for the child prior to the child reaching the age of 18 years. Also, in order to trigger former sections 320 and 321, the parent or parents had to acquire citizenship by *naturalization*, not birth. Under the CCA amendments, the citizen parent may have acquired citizenship by *birth or naturalization*.

## IV. APPLICABILITY OF THE CCA

### A. Positions of the Parties

We must decide whether the CCA applies to the instant case. The respondent and amicus curiae contend that the CCA is retroactive in application. That is, they argue that the intent of Congress, as set forth in the plain language of sections 101 and 104 of the CCA, was to permit aliens, such as the respondent, to be deemed to have acquired citizenship as long as they met the first and third requirements of revised section 320—namely, that at least one parent is a United States citizen and that the child is residing in the United States in the legal and physical custody of the United States citizen parent pursuant to a lawful admission for permanent residence—prior to their 18th birthday, even if they were 18 or older on the date that the CCA came into effect. Under this view, the CCA's effective date marks the time after which such a claim to citizenship may be formally recognized under the Act. It does not, however, impose a requirement that an alien meet all of the requisites of section 320—including being under the age of 18—on or after February 27, 2001.

The respondent and amicus curiae argue further that such an interpretation is consistent with the amendatory language of section 101 of the CCA, which states that "a child born outside the United States automatically becomes a citizen of the United States when all of the following conditions *have been fulfilled*," and with the language of section 104, which provides that the *amendments* "shall apply to *individuals* who satisfy the requirements of section 320." (Emphasis added.) They specifically contend that by choosing the word "individual" rather than "child" in section 104, Congress expressed an intent to apply the amendments to all persons who have met the requirements of revised section 320 of the Act, regardless of whether they were still "children" on the effective date of those amendments. Thus, they argue, the plain meaning of the language in sections 101 and 104 evidences Congress' intent to apply the CCA amendments to any individual who met the statutory criteria prior to attaining the age of 18 years, regardless of when the individual turns or has turned 18.

In response, the Service contends that the CCA is not retroactive in the sense argued by the respondent. The Service asserts that the plain meaning of the language in sections 101 and 104 of the CCA supports the position that the CCA amendments apply only to those individuals who meet all of the statutory requirements, including the age requirement, in effect on or after February 27, 2001. According to the Service, section 104 of the CCA not only specifies the Act's effective date—that is, February 27, 2001, which is 120 days after the date of enactment of the CCA—but also contains an instruction as to which individuals can claim the benefits of the Act: namely, those individuals who satisfy all of the requirements of section 320 of the Act, including being under

the age of 18, on or after such effective date. The word "individual" in section 104 was chosen, according to the Service, because the term "child," as defined in section 101(c)(1) of the Act, 8 U.S.C. § 1101(c)(1) (Supp. V 1999), means "an unmarried person under 21 years of age."

The respondent and amicus curiae also argue that our decision in *Matter of Fuentes*, 21 I&N Dec. 893 (BIA 1997), resolves the issue in the instant case. We disagree. In *Fuentes*, we determined that amendments to former sections 320 and 321 of the Act, increasing the qualifying age for automatic derivative citizenship from 16 to 18 years of age, were to be applied retroactively to the effective date of the Act. *See* Act of Oct. 5, 1978, Pub. L. No. 95-417, 92 Stat. 917 ("1978 Amendments"). The 1978 Amendments were far narrower in scope than the substantial provisions before us in this case. Also, unlike the CCA, the 1978 Amendments did not contain an effective date provision and there was no apparent controversy between the parties as to their retroactive effect. None of these circumstances obtain in the present case. Accordingly, we proceed to an independent analysis of the provisions before us.

## B.  Plain Language

The starting point in statutory construction is the language of the statute. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987); *INS v. Phinpathya*, 464 U.S. 183, 189 (1984) (stating that the starting point in cases involving statutory construction must be the language employed by Congress, and that it is assumed that the legislative purpose is expressed by the ordinary meaning of the words used).

We disagree with the assertion of each party that the language of sections 101 and 104 of the CCA clearly supports its respective position. Section 320 of the Act, as amended by section 101 of the CCA, is clear regarding the requirements that must be met for automatic acquisition of citizenship. However, it does not state the point in time at which those requirements must be met. For that, we turn to section 104 of the CCA, the central provision disputed by the parties. We find that this provision, although plainly stating the date on which the CCA amendments took effect, does not unambiguously resolve whether all of the requirements, including being under the age of 18, must be met on or after that date, or whether such requirements could be met prior to that date as well. As evidenced by the parties' conflicting but reasonable positions, the impact of section 104 on this critical issue is susceptible to more than one interpretation. *See C&H Nationwide, Inc. v. Norwest Bank Texas NA*, 208 F.3d 490, 495 (5th Cir. 2000) (stating that a statute is ambiguous if it is susceptible to more than one legitimate meaning). *But see Nehme v. INS*, *supra*, at 431 (holding that section 104 "contains an explicit command" that the revisions to section 320 of the Act shall apply only to alien children who satisfy the statutory conditions, including being under 18 years of age, on or after the February 27, 2001,

effective date). Accordingly, the task before us is to determine the temporal scope of the CCA's automatic citizenship provisions by recourse to other tools of statutory construction.[6]

## C. Legislative History

When the statutory language is unclear, as in this case, we look next to legislative history. *See Blum v. Stenson*, 465 U.S. 886, 896 (1984) (stating that where resolution of a question of federal law turns on a statute and the intention of Congress, a court looks first to statutory language and then to legislative history if the meaning of the statutory language is unclear). Although the legislative history of the CCA sheds light on the reasons for revising the automatic citizenship provisions, nowhere does it precisely state whether individuals who met the requirements of revised section 320 prior to its effective date, but who also turned 18 years of age prior to that effective date, were intended to be beneficiaries of this amendment. Indeed, we have searched the CCA's legislative history in vain for a single clear statement which indicates that the automatic citizenship provisions were intended to apply to such individuals.

We find the absence of such a statement, particularly in light of the context of the legislative intent and debates thereon, to be illustrative of the most plausible legislative intent. For example, during the debate in the House of Representatives, Representative Delahunt, who authored key portions of the CCA, cited examples of the types of individuals this legislation was intended to benefit. He referred to two individuals born abroad who were adopted by United States citizens. Their adoptive parents did not complete the certificate of citizenship process under former section 322 of the Act prior to their reaching the age of 18. Consequently, each individual was later deported from the United States after committing a deportable criminal offense. Conspicuously, neither Representative Delahunt nor the other sponsors stated or indicated in any way that, once the CCA was enacted, such individuals would be eligible to return to the United States as citizens. 146 Cong. Rec. H7774 (daily ed. Sept. 19, 2000)

---

[6] The presumption against retroactivity and the ensuing interpretive rules enunciated in *Landgraf v. USI Film Products*, 511 U.S. 244, 270 (1994), do not apply to this case. In *Landgraf*, the Supreme Court held that this presumption occurs only when the statute would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280. Rather than impair rights, increase liabilities, or impose new duties, the CCA liberalizes the automatic citizenship provisions and has no negative effect on any prior grant of citizenship or other immigration status. In *Nehme v. INS*, *supra*, the Fifth Circuit briefly noted the *Landgraf* presumption against retroactivity in its analysis of the CCA. However, the court did not find it necessary to apply the presumption because of its view that Congress explicitly stated the temporal reach of the automatic naturalization provisions in section 104 of the CCA.

(remarks of Rep. Delahunt). This would be the case, of course, if such individuals were now deemed to have become United States citizens at some point prior to their deportation. Rather, the CCA was referred to as a preventive measure, intended to ensure that such injustices are not repeated.

We must also consider, however, that at key points in the legislative history, there is reference to the CCA "retroactively" conferring citizenship. The House Judiciary Committee Report on H.R. 2883, as well as the opening floor statement of Lamar Smith, Chairman of the House Subcommittee on Immigration and Claims, in moving to pass H.R. 2883 in the House of Representatives, stated that the bill would amend the Immigration and Nationality Act "to confer United States citizenship *automatically and retroactively* on certain foreign-born children adopted by citizens of the United States." H.R. Rep. No. 106-852, at 1; 146 Cong. Rec. H7774 (daily ed. Sept. 19, 2000) (remarks of Rep. Smith) (emphasis added). The respondent and the Service each find support for their respective positions in this language.

The respondent asserts that Chairman Smith's use of the term "retroactively" was intended to convey that the CCA provisions should be retroactive in application, to include persons like himself who met the material conditions of new section 320 of the Act—including being under the age of 18 years—prior to its effective date. The Service disagrees. It asserts that the term "retroactively" was intended not to expand the category of intended beneficiaries of the CCA to those over 18, but, rather, to clarify that those under the age of 18 on the date the CCA came into effect, and who had previously met the requirements of revised section 320 of the Act, would be deemed to have automatically acquired United States citizenship as of the date on which the last of these requirements was fulfilled.

On review, we find that the legislative history supports the Service's position. It is well settled that there are two sources of United States citizenship, birth and naturalization. *See Miller v. Albright*, 523 U.S. 420, 422 (1998) (citing *United States v. Wong Kim Ark*, 169 U.S. 649, 702-03 (1898)). The bill, as originally introduced, amended the citizenship at birth provision at section 301 of the Act, as opposed to the naturalization provisions at sections 320 and 321 of the Act. Under these provisions, foreign-born children adopted by United States citizens would have derived United States citizenship automatically, retroactive to the date of birth. Both the Departments of Justice and State objected to the bill as originally drafted because it confused the fundamental distinction between acquisition of citizenship at birth and through naturalization. *See* H.R. Rep. No. 106-852, at 5, 9-13. In response to the Administration's concerns, the Committee modified the bill to amend the naturalization provisions and grant automatic citizenship, retroactive to the date that the statutory requirements are met.

Therefore, the issue of retroactivity is referenced solely in the context of when citizenship would vest, i.e., at birth or at the time the statutory conditions

are met.  There is no evidence of a discussion regarding the potential conferral of benefits on those over the age of 18 at the time the CCA would come into effect.  In light of the views expressed by the Administration and the Committee, we find that Representative Smith's reference to "retroactivity" alludes to the point in time at which a qualifying individual would be deemed to have automatically acquired United States citizenship.

### D.  Structural Analysis of Section 104 of the CCA

We also find it useful to consider the language and the placement of section 104 in the overall structure of the CCA.  *See K Mart Corp. v. Cartier Inc.*, 486 U.S. 281, 291 (1988) (holding that construction of language that takes into account the design of the statute as a whole is preferred).

Section 104 sets forth the effective date for Title I of the CCA.  Title II of the CCA, which addresses aliens who have improperly voted in federal, state, or local elections, or who have represented themselves as citizens for the purpose of obtaining benefits under the Act, has its own effective date provisions.  For example, sections 201(b)(3) and (c)(3) of Title II of the CCA, 114 Stat. at 1634, 1635, provide that the amendments made shall apply to "voting occurring before, on, or after September 30, 1996."  These effective date provisions are retroactive in application.  Had Congress intended Title I of the CCA to apply retroactively, it would have employed similar language.

In fact, Congress considered and rejected an effective date provision that would have made the automatic citizenship provisions retroactive in application. The bill, as originally introduced in the House, contained an effective date provision stating that the amendments made "shall apply with respect to persons adopted before, on, or after the date of enactment of this Act."  *See* H.R. 2883 (introduced in the House by Representative Lamar Smith on September 21, 1999).

In sum, we conclude that if Congress had intended the CCA to apply to individuals who were over the age of 18 on February 27, 2001, but who had met the requirements while under the age of 18, Congress would have so stated.  Nor do we find Congress' decision to postpone the effective date of Title I of the CCA until 120 days after enactment to have any relevance to the issue of whether the CCA is retroactive in application.  In the absence of a clear congressional statement and in light of the limited legislative history, we cannot find that the automatic citizenship provisions were intended to be retroactive in application.

### E.  Structural Analysis of Title III of the Act

Our reading of sections 320 and 322 of the Act, as amended by the CCA, is consistent with the statutory scheme set forth in Title III of the Act.  *See King v. St. Vincent's Hospital*, 502 U.S. 215, 221 (1991) (stating that a statute is to

be read as a whole, because the meaning of the statutory language, plain or not, depends on context).

Over time, Congress has periodically revised the nationality provisions in Title III of the Act to change the statutory requirements for acquired and derivative citizenship. Thus, the first step in determining whether an individual acquired or derived United States citizenship is to ascertain the applicable law. In determining whether an individual acquired citizenship at birth, the statute in effect at the time of the person's birth is generally controlling. *See Runnett v. Shultz*, 901 F.2d 782, 783 (9th Cir. 1990) ("The applicable law for transmitting citizenship to a child born abroad when one parent is a United States citizen is the statute that was in effect at the time of the child's birth.").

Similarly, in determining whether an individual derived citizenship by naturalization, the law in effect when the last material condition (naturalization, age, residence) is met is generally controlling. *See Matter of L-*, 7 I&N Dec. 512 (R.C. 1957); *see also* INS Interpretations § 320.1(a)(1) ("Thus, the combination of elements need to be completed during the validity of the statute which provided for derivative status by reason of such combination.").

Applying these rules to the instant case, we find that the respondent did not derive citizenship under pre-CCA sections 320, 321, or 322 of the Act. Nor are we persuaded that he can establish a derivative citizenship claim under post-CCA section 320. Under section 320 of the Act, as amended by the CCA, an individual will automatically derive citizenship when the last material condition has been met. The age requirement is a material condition, so if an individual, such as the respondent, is over 18 years of age during the validity of the statute now in effect, he cannot meet the material conditions for automatic citizenship.

Our conclusion is bolstered by the fact that amendments to the citizenship and naturalization provisions of the Act are generally prospective in nature. For example, the Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, 108 Stat. 4305 ("INTCA"), rewrote section 322 of the Act. The changes were prospective in nature. On the other hand, when Congress intends that certain changes apply retroactively, it explicitly provides for such retroactive application. *See* INTCA § 101, 108 Stat. at 4306 (providing that new section 301(h) of the Act shall apply retroactively).

Furthermore, acceptance of the respondent's argument would require us to interpret section 102 of the CCA, repealing section 321 of the Act, as having retroactive effect, perhaps as far back as the enactment of the Immigration and Nationality Act of 1952. Thus, all claims to derivative citizenship previously addressed under former section 321 would be subject to reconsideration under the new provisions of section 320. Such a radical change in naturalization law would require a far clearer statement of congressional intent than can be found either in the plain language or the legislative history of the CCA.

## V.  CONCLUSION

In deportation proceedings, evidence of foreign birth gives rise to a rebuttable presumption of alienage, and the burden shifts to the respondent to prove citizenship.  *Matter of Leyva*, 16 I&N Dec. 118, 119 (BIA 1977).  Upon evaluating and weighing the arguments developed by both the Service and the respondent, we find that the respondent's claim of derivative citizenship is not supported by a preponderance of credible evidence.  Accordingly, the appeal will be dismissed.

**ORDER:**  The appeal is dismissed.

**FURTHER ORDER:**  The motion of the Immigration and Naturalization Service is denied as moot.

*CONCURRING OPINION:* Mary Maguire Dunne, Vice Chairman; in which Lori L. Scialabba, Acting Chairman; David B. Holmes, Lauri Steven Filppu, Patricia A. Cole, and Philemina McNeill Jones, Board Members, joined

I respectfully concur.

The text and content of the effective date provision of the Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631 ("CCA"), make clear the intent of Congress.  In order for an individual to satisfy the requirements of the effective date provision and qualify for citizenship under the terms of the CCA, Congress stated that the individual must  "satisfy the requirements . . . on such effective date."  CCA § 104, 114 Stat. at 1633.  One of those requirements is being a "child . . . under the age of eighteen years."  CCA § 102, 114 Stat. at 1632.  The language of the statute is, in my opinion, clear and unambiguous and, although the legislative history supports such a conclusion, I see no need to look to the legislative history to determine Congress' intent.  *See Nehme v. INS*, 252 F.3d 415 (5th Cir. 2001); *see also Hughes v. Ashcroft*, 2001 WL 699357 (9th Cir. 2001).

*CONCURRING OPINION:* Cecelia M. Espenoza, Board Member

I respectfully concur in the separate opinions of Mary Maguire Dunne, Vice Chairman, and Lory Diana Rosenberg, Board Member, to the extent that each finds that the pertinent language of the Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631, is plain, and that our decision is controlled by circuit precedent.

*CONCURRING AND DISSENTING OPINION:* Lory Diana Rosenberg, Board Member

I respectfully concur in part and dissent in part.

It is undisputed that a federal agency is obligated to follow United States circuit court precedent in applicable cases originating within that circuit. *NLRB v. Ashkenazy Prop. Management Corp.*, 817 F.2d 74, 75 (9th Cir. 1987), *cert. denied*, 501 U.S. 1217 (1991); *Allegheny General Hospital v. NLRB*, 608 F.2d 965, 970 (3d Cir. 1979) ("A decision by this court, not overruled by the United States Supreme Court, is . . . binding on all inferior courts and litigants in the [circuit], and also on administrative agencies."). Administrative agencies are not free to refuse to follow circuit court precedent in cases originating within the circuit, unless the agency has a good faith intention to seek review of the particular proceeding by the Supreme Court. *Lopez v. Heckler*, 572 F. Supp. 26 (C.D. Cal. 1983), *aff'd in part and rev'd in part*, 725 F.2d 1489, 1503 (9th Cir.), *vacated and remanded*, 469 U.S. 1082 (1984).

We adhere to the principle that we are bound to acquiesce to the controlling decisions of the federal circuit courts of appeals, and we have historically followed circuit court precedent in cases arising in that circuit. *See Matter of K-V-D-*, Interim Decision 3422, at 9-10 (BIA 1999) (citing *Matter of K-S-*, 20 I&N Dec. 715, 719-20 (BIA 1993)); *Matter of Anselmo*, 20 I&N Dec. 25, 31-32 (BIA 1989). The United States Court of Appeals for the Fifth Circuit, in which this case arises, has "conclude[d] that § 104 contains an explicit command that the amended automatic naturalization provisions only be applied *to alien children* who satisfy the statute's conditions *on or after* February 27, 2001, the relevant effective date." *Nehme v. INS*, 252 F.3d 415, 431 (5th Cir. 2001) (emphasis added) (referring to section 320 of the Immigration and Nationality Act (to be codified at 8 U.S.C. § 1431)).[1]

Accordingly, the outcome in this case is determined by *Nehme v. INS*: the respondent cannot qualify as a United States citizen because, although he qualifies in all respects with the conditions of section 320 of the Act, as amended by the Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631 ("CCA"), he was over 18 before February 27, 2001. *Nehme v. INS*, *supra*, at 431. Therefore, I concur in the result reached by the majority in this case.

Two additional considerations cause me to concur in the result reached by the majority. First, the Court of Appeals for the Ninth Circuit, which also has

---

[1] Section 320 of the Act provides automatic citizenship for a child born outside the United States "*when* all of the following conditions *have been fulfilled*": (1) at least one parent is a United States citizen; (2) the child is under 18 years old; and (3) the child is residing in the United States in the legal and physical custody of the United States citizen parent pursuant to a lawful admission for permanent residence. Child Citizenship Act of 2000, Pub. L. No. 106-395, § 101(a), 114 Stat. 1631, 1631 (emphasis added).

addressed the question before us, has concluded, "In short, the CCA granted automatic citizenship only to those *children who were under the age of 18*, and who met the other criteria, on February 27, 2001." *Hughes v. Ashcroft*, 2001 WL 699357, at \*7 (9th Cir. 2001) (emphasis added). The principle of acquiescence articulated above mandates that we apply the result reached by the majority to cases arising in the Ninth Circuit. Although none of the remaining 10 circuits have ruled expressly as to the scope of section 320, as amended by the CCA, interests of federal uniformity militate strongly in favor of our following a consistent approach in our adjudications nationwide. *See Matter of Crammond*, 23 I&N Dec. 9, 15 (BIA 2001) ("Important policy considerations favor applying a uniform federal standard in adjudicating removability . . . under the Act."); *Matter of Manrique*, 21 I&N Dec. 58, 64 (BIA 1995) (applying a Ninth Circuit decision nationwide, "[i]n the interest of uniform and fair application of the immigration laws"); *see also Nehme v. INS*, *supra*, at 422 (citing *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43 (1989) (recognizing the preference for nationwide application of federal statutes)).

Second, the Immigration and Naturalization Service has issued an interim rule, effective June 13, 2001, which addresses the issue that is the subject of our decision. *See* Children Born Outside the United States; Applications for Certificate of Citizenship, 66 Fed. Reg. 32,138, 32,144 (2001) (to be codified at 8 C.F.R. § 320.2(a)(2)).[2] This interim rule, which purports to implement Title I of the CCA, specifies that individuals must meet *all* the statutory requirements, including the age requirement, *on or after* February 27, 2001, to be eligible for citizenship under section 320 of the Act.

Although the interim rule issued by the Service warrants consideration, its effect, if any, on our ruling remains to be determined. *Matter of Rodriguez-Tejedor*, 23 I&N Dec. 153, 154-55 (BIA 2001).[3] Nevertheless, we are bound by "[r]egulations with the force and effect of law." *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954) (citing *Bridges v. Wixon*,

---

[2]  I am troubled by the fact that the Service, which is a party in the litigation before us, can attempt to make its litigation position dispositive through the regulatory process. The Service's ability to do so suggests an inherent conflict in its shared authority with the Board as a delegate of the Attorney General and calls into question the integrity of the quasi-judicial adversary process we follow. *See* 8 C.F.R. § 3.1(d) (2001).

[3]  The Board's authority is created and delegated by the Attorney General. *See* section 103(a)(4) of the Act, 8 U.S.C. § 1103(a)(4) (Supp. V 1999); 8 C.F.R. §§ 3.1(a)(1), (b); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266 (1954); *Matter of Ponce De Leon*, 21 I&N Dec. 154, 158 (BIA 1996, 1997; A.G. 1997) (vacated on other grounds on remand from the Attorney General) (citing *Matter of Anselmo*, *supra*; *Matter of Medina*, 19 I&N Dec. 734, 742, 746 (BIA 1988)). According to that authority, the decisions of the Board are binding on all employees of the Service, as well as on Immigration Judges. *See* 8 C.F.R. § 3.1(g).

326 U.S. 135, 150-56 (1945); *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 155 (1923) ("One under investigation with a view to deportation is legally entitled to insist upon the observance of rules promulgated by the Secretary pursuant to law."); *see also* section 103(a)(3) of the Act; *United States v. Nixon*, 418 U.S. 683, 695 (1974) ("So long as this regulation is extant it has the force of law."). Furthermore, the Service's regulation, which requires that an individual reach the age of 18 only after the amendment to section 320 takes effect to qualify for automatic citizenship, is consistent with the rulings of the Fifth and Ninth Circuits. *See* 8 C.F.R. § 320.2(a)(2).

Although I feel bound to concur, I cannot agree with the reasoning provided by the majority in support of its decision. Interpretation of statutory language begins with the terms of the statute itself. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987). Section 104 of the CCA, 114 Stat. at 1633, provides that on the effective date, February 27, 2001, its provisions apply to those "*individuals who satisfy* the requirements of section 320 or 322 of the Immigration and Nationality Act, *as in effect on such effective date*." (Emphasis added.) I note, in addition, that the terms of section 320 itself refer to conditions that "*have been* fulfilled." Section 320(a) of the Act, *as amended by* CCA § 101(a), 114 Stat. at 1631 (emphasis added) (referencing an event occurring in the past).

If those terms, on their face, constitute a plain expression of congressional intent, they must be given effect. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). In making this determination, the words used should be given their "'ordinary or natural'" meaning. *Bailey v. United States*, 516 U.S. 137, 145 (1995) (quoting *Smith v. United States*, 508 U.S. 223, 228-29 (1993)); *INS v. Phinpathya*, 464 U.S. 183, 189 (1984). The question before us, therefore, is what is meant by the phrases "individuals who satisfy" and "as in effect on [the] effective date." CCA § 104.

I disagree that this language is not plain or that it is ambiguous because the parties have offered differing readings of the language. *Matter of Rodriguez-Tejedor*, *supra*, at 158-59. It should be elementary that statutory language cannot be deemed ambiguous merely because the parties assert that it holds different meanings. *But cf. id*. If that were a reasonable basis on which to find statutory language ambiguous rather than plain, every statute whose applicability is the subject of litigation would be deemed ambiguous. *See Matter of Vasquez-Muniz*, Interim Decision 3440 (BIA 2000) (finding the statutory language to be plain, although its meaning was contested); *Matter of Ruiz-Romero*, Interim Decision 3376 (BIA 1999). Clearly, being susceptible to more than one interpretation does not, in itself, render statutory language ambiguous.[4]

---

[4] The majority's citation to *C&H Nationwide, Inc. v. Norwest Bank Texas NA*, 208 F.3d

(continued...)

Both the Fifth and Ninth Circuits, which have reached the same result as the majority, have indicated that they find the language to be plain. I agree that the language is plain, but I do not read it to require that an individual be under 18 only *on or after* February 27, 2001, to acquire citizenship.

First, the statutory language plainly states that the qualifications for automatic citizenship under section 320(a) of the Act are met when the specified conditions *have been fulfilled*. That language strongly indicates that the conditions may have been fulfilled prior to the effective date of the amended provision. Similarly, Congress' use of the phrase "individuals who satisfy" suggests that the individuals need not be children (i.e., need not be under 18), and that they may satisfy the terms of section 320 now. CCA § 102, 114 Stat. at 1632.

Second, the effective date provision states that section 320 of the Act applies only "*as in effect* on [the] effective date." CCA § 104 (emphasis added). The language "as in effect" refers specifically to the terms of section 320, as amended. In other words, a qualifying individual—one who has fulfilled the statutory conditions—automatically is deemed a citizen only effective February 27, 2001. Automatic citizenship is not conferred retroactively to the individual's birth and it is not conferred retroactively to the date on which he or she fulfilled all of the conditions. If the respondent qualifies according to the amended provision, automatic citizenship is conferred on him or her according to the law that is in effect as of the February 27, 2001, effective date.

This is *consistent* with the legislative history, which reflects that Congress modified the statutory amendment in response to concerns raised by the Department of Justice and the Department of State.[5] In particular, Representative Lamar Smith noted that, as amended in the Judiciary Committee, the bill would not extend automatic citizenship to the time of birth. Rather, automatic citizenship was extended to the time the individual satisfied all of the conditions. *See* H.R. Rep. No. 106-852, at 5 (2000), *reprinted in* 2000 U.S.C.C.A.N. 1499, 1501; H.R. 2883, 106th Cong. (2000). It is also consistent

---

[4](...continued)
490, 495 (5th Cir. 2000), to support its contention that the statute is ambiguous is inapposite. That opinion was merely correcting an erroneous assumption by the parties in that particular case and clarifying that the assignment of more than one meaning was one possible indicator of ambiguity. *Id*. ("Appellees misconstrue the language of *United Services . . . .* We never stated that the mentioned condition was the exclusive indication of ambiguity, as Appellees contend.").

[5] Contrary to the concurring opinion of Vice Chairman Dunne, we may look to legislative history "to determine . . . whether there is 'clearly expressed legislative intention' contrary to that language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses." *INS v. Cardoza-Fonseca*, *supra*, at 432 n.12 (quoting *United States v. James*, 478 U.S. 597, 606 (1986); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)).

with the statements of Representative Delahunt, who expressed concern that individuals who had been adopted by United States citizens later had been deported because their parent or parents had not completed the certificate of citizen process on their behalf under then-existing law. 146 Cong. Rec. H7774 (daily ed. Sept. 19, 2000) (remarks of Rep. Delahunt).

The effective date provision does not appear to be a limiting provision that restricts automatic citizenship only to those who fulfill the conditions *after* February 27, 2001. Rather, the entire provision, as amended, is a curative provision. *Matter of Fuentes*, 21 I&N Dec. 893 (BIA 1997). Nowhere does the statutory language include the words "on or after." In fact, the clause, "before, on or after," which was included in the final versions of sections 201(b)(3) and (c)(3) of the CCA, 114 Stat. at 1633, 1634, was omitted from the final version of section 321 of the Act, as amended.

Indeed, the Service has had to read this language into its regulation to reach the result that otherwise qualified persons who were under 18 before the amendment took effect now are excluded from its benefits. Similarly, the Fifth Circuit has had to adopt such language in order to reach the result it reaches in *Nehme v. INS*, *supra*. *But see Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 168 n.16 (1993) (stating that "we may not add terms or provisions where congress has omitted them, *see Gregory v. Ashcroft*, 501 U.S. 452, 467 (1991); *West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 101 (1991)").[6]

I recognize that the Fifth Circuit noted, "However, when the bill was taken up for consideration on the House floor, the second clause had been added. Obviously, Congress must have intended that this clause have some effect." *Nehme v. INS*, *supra*, at 432 (referring to the language "as in effect"). Nevertheless, in light of the legislative history, it seems clear that the purpose and effect of the modification was to prevent the provision from operating so that citizenship would be conferred automatically back to the time of an individual's birth.

If Congress had intended that only those persons who turned 18 *on or after* February 27, 2001, could qualify for automatic citizenship under the CCA, it could have easily so stated. Congress demonstrated only recently that it is well aware of the way to indicate that new laws are to be applicable to events occurring only *on or after* a given effective date. For example, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of

---

[6] Moreover, "[T]his restraint is even more compelling when congress has specifically removed a term from a statute: 'Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded.'" *Haitian Centers Council, Inc. v. McNary*, 969 F.2d 1350, 1359 (2d Cir. 1992) (quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 392-93 (1980) (Stewart, J., dissenting) (quoted with approval in *INS v. Cardoza-Fonseca*, *supra*, at 442-43)).

Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), contains many such express temporal restrictions on the occurrence of events or the filing of applications. *INS v. St. Cyr*, 121 S. Ct. 2271 (2001).[7]

Congress historically has included such limitations expressly in the naturalization provisions of the Act. *See INS v. Pangilinan*, 486 U.S. 875, 882 (1988) ("Moreover, Congress has again exercised its exclusive constitutional power to provide that any petition for naturalization filed *on or after* September 26, 1961, will be heard and determined under the 1952 Nationality Act, as amended.   See § 310(e), 75 Stat. 656, 8 U.S.C. § 1421(e)." (Emphasis added.)); *Vance v. Terrazas*, 444 U.S. 252, 255 n.1 (1980) ("(a) *From and after the effective date* of this chapter a person who is a national of the United States whether by birth or naturalization, shall lose his nationality by . . . ." (quoting 8 U.S.C. § 1481) (emphasis added)).

Perhaps most prominently, in *Fiallo v. Bell*, 430 U.S. 787, 790 n.2 (1977), the Supreme Court recognized that "[t]he 1976 amendments . . . 'shall not operate to affect the entitlement to immigrant status . . . *as in effect* on the day *before* the effective date of this Act . . . .'" (Emphasis added.)  In that case, "as in effect" expressly referred to the law in effect *before* the effective date, specifying that the amendments would not apply to prior qualifications for status.  No such limiting language exists here.

The language of the current statute does not limit automatic citizenship to individuals who have fulfilled the qualifying conditions only after the law took effect, nor does it expressly exclude those who have fulfilled those conditions before the law took effect.  Accordingly, in my view, "as in effect on the effective date" clearly refers to the conditions that "have been fulfilled" and exist *now.*  No matter whether these conditions were met previously, or what the

---

[7]  *See, e.g.*, IIRIRA § 344(c), 110 Stat. at 3009-637 (amendment adding false claims of United States citizenship as ground for removal "shall apply to representations made *on or after* the date" of enactment); IIRIRA § 350(b), 110 Stat. at 3009-640 (amendment adding domestic violence and stalking as grounds for deportation "shall apply to convictions, or violations of court orders, *occurring after the date*" of enactment); IIRIRA § 352(b), 110 Stat. at 3009-641 (amendments adding renouncement of citizenship to avoid taxation as a ground for exclusion "shall apply to individuals who renounce United States citizenship *on or after* the date" of enactment); IIRIRA § 380(c), 110 Stat. at 3009-650 (amendment imposing civil penalties on aliens for failure to depart "shall apply to actions occurring *on or after*" effective date); IIRIRA § 384(d)(2), 110 Stat. at 3009-653 (amendments adding penalties for disclosure of information shall apply to "offenses occurring *on or after* the date" of enactment); IIRIRA § 531(b), 110 Stat. at 3009-675 (public charge considerations as a ground for exclusion "shall apply to applications submitted *on or after* such date"); IIRIRA § 604(c), 110 Stat. at 3009-694 (new asylum provision "shall apply to applications for asylum filed *on or after* the first day of the first month beginning more than 180 days after the date" of enactment) (emphasis added).

individual's status was previously, these are the rules that determine the person's citizenship status as of the February 27, 2001, effective date, i.e., *now*.

Accordingly, automatic citizenship is conferred by operation of law as of February 27, 2001, to those individuals who have fulfilled the conditions on that date and to those individuals who may later satisfy the conditions "as in effect on the effective date." These refer to the conditions listed in section 320 of the CCA, which includes the condition that the individual is under 18. Neither the provision itself, nor its effective date, limits eligibility to those individuals who turn 18 only on or after February 27, 2001.

This is a prospective provision that confers citizenship as of its effective date. Retroactivity, in the sense that we have addressed it when a statute imposes a disability or alters settled expectations, simply does not apply here. *See INS v. St. Cyr*, *supra*; *Landgraf v. USI Film Products*, 511 U.S. 244, 273 (1994) ("Even absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations. When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive.").[8] Furthermore, the Supreme Court has specifically held that statutory provisions that alter or affect forms of prospective relief are to be given effect upon the effective date of the legislation and *should be* applied to pending suits. *American Steel Foundries v. Tri-City Central Trades Council*, 257 U.S. 184, 201 (1921); *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 464 (1921); *see also Hall v. Beals*, 396 U.S. 45 (1969).[9]

Although the Fifth Circuit found that "[i]nterpreting § 104 to apply to persons who satisfied the requirements at *any time* in the past or future would thus render this final clause meaningless," *Nehme v. INS*, *supra*, at 431, I must differ. The critical difference made by the inclusion of "as in effect" in the effective date provision is not that it limits eligibility to those turning 18 after February 27, 2001, but that it makes clear that citizenship is automatic on the

---

[8] Similarly, the three separately concurring Justices in *Landgraf v. USI Film Products*, *supra*, at 293 (Scalia, J., joined by Kennedy and Thomas, JJ., concurring in the judgment), emphasized that intervening law was typically applied to pending applications for prospective relief. *Id.* ("The reason, which has nothing to do with whether it is possible to have a vested right to prospective relief, is that '[o]bviously, this form of relief operates only *in futuro*.'" (quoting *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 464 (1921))). Accordingly, the question of retroactivity, to the extent it is posited in this case, is a red herring.

[9] In prior decisions, we also insisted on finding that new provisions of law have a prospective effect only when applied to facts that had been in existence prior to a new law's enactment. *See, e.g.*, *Matter of Gomez-Giraldo*, 20 I&N Dec. 957 (BIA 1995); *Matter of A-A-*, 20 I&N Dec. 492 (BIA 1992); *see also Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996; A.G. 1997). Nothing in the majority or concurring opinions explains this departure from our prior patterns.

February 27, 2001, date to those individuals who "have fulfilled" the terms of amended section 320 of the Act under the law that is in effect on that date.

As stated, despite my disagreement I am bound to follow the Fifth Circuit's decision in this case. However, I cannot join the analysis relied upon by the majority in support of the result reached. Accordingly, I dissent from the majority's reasoning, but feel that I must concur in the result.